# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **K STREET DEVELOPERS, LLC, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | Civil Action No. 1:12-cv-00666- |
| | : | **RLW** |
| **TEACHERS INSURANCE AND ANNUITY** | : | |
| **ASSOCIATION OF AMERICA, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs K Street Developers, LLC and Union North Phase I, LLC by and through their undersigned counsel, hereby bring this First Amended Complaint against Defendants Teachers Insurance and Annuity Association, TIAA Union Place I, LLC and TIAA CREF Global Investments LLC and state as follows:

## JURISDICTION

1.  This Court has jurisdiction pursuant to D.C. Code Sections 11-921(a) and 13-423(a) (2001 ed.).

## PARTIES

2.  Plaintiff K Street Developers, LLC ("K St. Developers") is a limited liability company organized under the laws of the District of Columbia. K St. Developers is managed by K Street Manager, Inc., of which Ronald Cohen ("Cohen") is the president. Cohen has been in the real estate development business in the Washington D.C. metropolitan area for over forty years.

3. Plaintiff Union North Phase I, LLC ("Union North") is a limited liability company organized under the laws of the District of Columbia.  Plaintiff Union North was organized for the purpose of the transactions which are the subject of this Complaint.

4. Defendant Teachers Insurance and Annuity Association ("TIAA") is a corporation organized under the laws of New York.  TIAA is chartered as a stock life insurance company.

5. Defendant TIAA Union Place I, LLC ("TIAA-Union") is a limited liability company organized under the laws of Delaware.  On information and belief, TIAA-Union was organized by TIAA for the purpose of the transactions that are the subject of this Complaint.

6. Defendant TIAA-CREF Global Investments LLC ("TIAA-CREF") is a limited liability company organized under the laws of Delaware.

### THE JOINT VENTURE

7. During the 1980s and 1990s, the area in Washington D.C. that is north of Massachusetts Avenue, N.E. consisted mostly of vacant land, former industrial sites and old empty warehouses.  The area, known as "NoMa" is an area designated as a Redevelopment Area for city planning and economic development purposes.  In 2007, seeing the need and potential for that area's revitalization,  the District of Columbia City Council created, and the then Mayor approved, the NoMa Business Improvement District.  To attract development, residential property developments in NoMa are eligible to apply for tax abatements.  The tax abatements are not limitless, however.  The NoMa tax abatements are capped annually at $5,000,000 and in the aggregate at $50,000,000.

8. Cohen, having been a developer in Washington, D.C. for over forty years, saw that there was a market for residential construction in the NoMa area and envisioned the development

2

of upscale residential apartment buildings to respond to that growing market. In or about June 2006, Plaintiffs and Defendant TIAA, entered into a joint venture for the development of a residential construction project to be built on property within the K Street corridor within NoMa. The project was to consist of two apartment buildings located adjacent to each other. Plaintiffs and Defendant TIAA agreed that the development would be built in two phases. They also agreed that Plaintiff K St. Developers would contribute the land and that TIAA (directly or through an entity it would create for the project) would provide the financing for each phase. The profits of the venture would be shared by Plaintiffs and Defendant TIAA either directly or through entities to be formed. Plaintiffs and Defendant TIAA also agreed that each of the two phases of the project would be documented by separate (although mirrored) agreements. Although the residential buildings would be built in the two phases, they would be part of an approved Planned Unit Development ("PUD"), as described in D.C. Zoning Case No.05-36 (of which Defendant TIAA had, or should have had, notice as a result of due diligence undertaken prior to participation in the joint venture). It would violate the PUD if two buildings were built which were not physically connected to each other. The PUD provided that the height approved for the second building was dependent on a physical connection to the first building.

## THE PROJECT - PHASE I

9. To undertake the first phase ("Project Phase I") of the two phase project agreed to by the joint venturers, Plaintiffs and Defendant TIAA caused a limited liability company to be formed. On or about January 31, 2007, Plaintiff Union North and Defendant TIAA-Union entered into a Limited Liability Agreement ("LLC Agreement") to form Union Place Phase I, LLC (the "Company"), a limited liability company organized under the laws of Delaware.

3

Plaintiff Union North is the Operating Member of the Company and Defendant TIAA-Union is the Investment Member of the Company. The Company was formed to acquire and develop land located at approximately 3rd Street, N.E. between K and L Streets, N.E., in the District of Columbia (the "Phase I Property").   Agreement at §2; Agreement at Exh. C-1.  The Phase I Property is located in the NoMa business improvement district.  The Phase I Property was jointly owned by Plaintiff K St. Developers, Three Cee Investors, LLC (of which Cohen is the managing member), CASCO, Inc. (of which Cohen is the vice-president) and Union North Corporation (of which Cohen is the president) (Three Cee, CASCO and Union North Corporation are collectively referred to here in as "the other Cohen Companies"), all of whom joined in the conveyance of the property to the Company by Deed dated January 31, 2007.

10.  Also on or about January 31, 2007, Plaintiff Union North as Developer, and the Company as Owner, entered into a Development Agreement by which the Company engaged Plaintiff Union North to develop a multi-family residential project consisting of approximately 210 units on the Phase I Property.  Recital C of the Development Agreement refers to the LLC Agreement as the "Venture Agreement."

11.  The LLC Agreement and Development Agreement were entered into to implement the first phase of the redevelopment project agreed to by the Plaintiffs and Defendant TIAA as joint venturers.  The agreements were entered into in furtherance of that overarching joint venture, not in place of it.  If Plaintiffs had had any doubt that Defendant TIAA had committed and agreed to both phases of the project, they never would have undertaken taken the steps to undertake Project Phase I with Defendant TIAA and its related entity, Defendant TIAA-Union.

12. The Development Agreement set out the services to be provided with regard to the actual physical development of Project Phase I such as, by way of example, supervising architecture and engineering services, managing the construction bidding process, and negotiating the construction and other contracts. The LLC Agreement set out the financing terms for Project Phase I and the roles of Defendant TIAA-Union as the Investment Member and of Plaintiff Union North as the Operating Member. These agreements created, in effect, a "sub-joint venture" of the original overarching joint venture of Plaintiffs and Defendant TIAA.

13. Project Phase I was developed according to schedule and under budget. The apartment building, named the Loree Grand, was stabilized in just eight months (in or around the spring of 2010). As of approximately November 2011, it was operating at 97% occupancy and is considered one of the success stories within the NoMa community.

14. After the Loree Grand was completed and leased, an issue arose between the parties in August 2010 apparently sparked by the fact that Cohen was not able to meet with one of the agents for TIAA on less than 24 hours notice. Over the next several months, a series of correspondence was exchanged between the parties related to what TIAA's agent, Trevor Michael, perceived as a personal slight by Cohen when he did not make himself available on very short notice for the August 2010 meeting. The situation escalated when, in January 2011, TIAA, contrary to its agreement to participate in both phases of the project, notified Plaintiffs that it would not proceed with the second phase of the project. Eventually, however, it appeared that the issue between Cohen and Michael had resolved. It appeared that TIAA remained committed to the overarching joint venture.

15. Other than the incident described in Paragraph 14, there were no issues or disputes between the parties with respect to Project Phase I during the time frame between the stabilization of Project Phase I and the gearing up by the parties for the second phase of the project. During that time period, Defendant TIAA-Union never notified Plaintiffs of any default under either the LLC Agreement or the Development Agreement, nor did any other Defendant notify either Plaintiff of any default under any agreement.

16. It was important to the success of the overarching joint venture that the parties move into the second phase of the project promptly so that the second phase of the project could capitalize on the success of Project Phase I and take advantage of the tax credits that were still available for residential development projects in the NoMa Business Improvement District.

**THE PROJECT - PHASE II**

17. Having successfully completed Project Phase I and having seemingly resolved the differences that had arisen between Cohen and Michael in August 2010, the parties turned their efforts toward the next phase of the project that was agreed to by the joint venture between Plaintiffs and Defendant TIAA. The second phase of the project would develop real property ("Phase II Property") located adjacent to the Phase I Property. As noted above, the PUD approved by the District of Columbia required the buildings on the two parcels to be physically connected to each other. The building constructed on the Phase I Property was purposely constructed in a way that the building to be constructed on the Phase II Property could, in fact, be physically connected to it.

18. The Phase II Property, like the Phase I Property, is owned by Plaintiff K St. Developers and K St. Developers agreed to contribute the Phase II Property to the second phase

of the project.  At a March 10, 2011 meeting between Plaintiffs and Defendant TIAA, the parties

agreed that the Phase II Property would be valued at $42 million.

19.   On or about August 2, 2011, having already been in discussions for several months

regarding the second phase of project, Plaintiff K St. Developers and Defendant TIAA caused

Plaintiff K St. Developers and Defendant TIAA-CREF, respectively, to enter into a Letter of

Intent providing for the construction on the Phase II Property of approximately 525 rental

apartments plus retail space and parking ("Project Phase II").

20.   The Letter of Intent provided for the formation of a joint venture between Defendant

TIAA-CREF and Plaintiff K St.  Developers, 90 percent of which would be acquired by

Defendant TIAA-CREF and 10 percent of which would be acquired by Plaintiff K St.

Developers.  This joint venture was, in effect, a "sub- joint venture" of the original overarching

joint venture of Plaintiffs and Defendant TIAA.   The recited "non-binding" nature of the Letter

of Intent was not intended to make the overarching joint venture for a two phase redevelopment

project itself non-binding.

21.   Although the LLC Agreement for Project Phase I gave Defendant TIAA-Union a

right of first offer to participate in the Project Phase II, the fact that Defendant *TIAA-Union*

declined to exercise that offer in no way relieved Defendant *TIAA* of its agreement to participate

in both phases of the joint venture.  In fact, Defendant TIAA-CREF, like Defendant TIAA-

Union, is another of Defendant TIAA's related business entities.

22.   Soon after the Letter of Intent was signed by Defendant TIAA-CREF and Plaintiff K

St. Developers, the parties began to implement Project Phase II.  As early as two weeks later, the

architects were hired and the parties were discussing payment arrangements for the architects.

Defendant TIAA-CREF requested projected budget information from Plaintiff K St. Developers

for the remainder of the calendar year and Plaintiff K St. Developers was sending Defendant

TIAA-CREF proposed contracts for the various vendors.

### THE DEFENDANTS' NOTIFICATION OF REMOVAL

23. By email dated February 22, 2012, counsel for Plaintiff Union North transmitted to

Defendant TIAA a request by Plaintiff Union North for approval to "move forward on the

extension of the current financing on the Loree Grand project, through the Second Extension

Maturity Date of May 23, 2014."   This request was a "Request for Major Decision" under the

LLC Agreement.

24. Based on lender's readiness to approve the loan extension, the parties' past course of

dealings, including the fact that Project Phase I had been successfully completed and remains a

successful project today, and the fact that Project Phase II started as all the parties had agreed

and contemplated, and based on the fiduciary duties Defendants owed as joint venturers and

members of the Company, Plaintiffs expected a favorable response to Plaintiff Union North's

February 22, 2012 email.

25. Instead of a favorable response, however, Defendants suddenly acted to remove

Plaintiff Union North as Operating Member of the Company.  First, Defendant TIAA sent an

email fifty minutes after Plaintiff's email referenced above in Paragraph 21.  TIAA's email was

very short: "I ask that (sic) you hold off on the construction loan extension request.  Therefore, at

this time you do not have TIAA's approval to move forward with the request for construction

loan extension."  Then, approximately two hours later, counsel for Defendant TIAA-Union sent

Plaintiff Union North a letter purporting to remove Plaintiff Union North as the Operating

8

Member of the Company effective February 27, 2012 (the "First Removal Letter").   The basis of

the reported removal was "multiple Removal Events" under the provisions of Section 4.4(b) of

the LLC Agreement.

26.  In response to the Removal Letter, Cohen sent a fax to Defendants' counsel

requesting a meeting with his clients.  The Defendants agreed to meet with Cohen and the

meeting was scheduled to take place in Washington, D.C. on February 29, 2012.

27.  Apparently unsatisfied with Cohen's efforts since the February 29, 2012 meeting to

respond to the assertions in the First Removal Letter, counsel for Defendants advised Plaintiff

Union North, by letter dated March 9, 2012,  that it was being removed, effectively immediately,

as the Operating Member of the Company and being replaced by Defendant TIAA-Union, the

Investor Member ("Second Removal Letter").

28.  Since February 22, 2012, the date Defendants' counsel sent the First Removal Letter,

no further progress has been made on Project Phase II.

29.  Plaintiff disputes that there were grounds, in fact, on which to base the removal of

Plaintiff Union North.  Specifically:

(a) Plaintiff Union North denies that the "Removal Events" identified in the February 22,

2012 letter occurred. To the contrary, Plaintiff Union North alleges that the "Removal Events"

were fabricated;

(b) Plaintiff Union North did not fail to make Additional Capital Contributions under

Section 6.2 of the Operating Agreement. Plaintiff made part of its Capital Contributions in cash

and part in credits owed to Plaintiffs for (i) the storage of Phase I Property dirt on the Phase II

Property; (ii) the use of Phase II Property for 25 parking spots for the benefit of Phase I Property;

9

and (iii) use of Phase II Property for a dog park for the benefit of Phase I Property.   The parties

agreed that once the construction of Phase II was completed, there would be a "true-up" with

regard to payments, credits and contributions;

(c) Plaintiff Union North denies it misapplied funds derived from the Phase I Property.

Regarding the tax refund specifically, although the refund was deposited into an account for

Ronald Cohen Management Company, the refund was a set-off against the benefit to the Phase I

Property from the storage of the dirt on the Phase II Property; the use of the Phase II Property for

a dog park for the benefit of Project Phase I; and the use of Phase II Property for parking spaces

for the benefit of Project Phase I.   The manner in which the tax refund was handled was with

notice to and approval by the Defendants.   Regarding the asserted overpayment to Ronald Cohen

Management Company, Plaintiff Union North denies this allegation. In fact, Ronald Cohen

Management Company provided its services at no cost to the LLC for approximately twenty-four

months.   Regarding ADC Builders, Inc., ADC Builders was not overpaid.   Defendants requested

ADC Builders to stay on the project for an additional four months and approved a change order

to that effect;

(d) Plaintiff Union North denies it intentionally commingled funds derived from the

Phase I Property and has no knowledge as to what this asserted Removal Event is based on;

(e) Plaintiff Union North denies it caused the LLC to breach the terms of the

Westdeutsche loan Agreement; that it wrongfully executed a change order in the ADC Builders

contract; that it misused funds to pay for expenses of Cohen affiliates; that it failed to use

commercially reasonable efforts to minimize Operating expenses or to conduct the affairs of the

Company in accordance with good industry practice.

COUNT I
**BREACH OF FIDUCIARY DUTY - DEFENDANT TIAA**

30.   Plaintiff realleges Paragraphs 1 through 29 as if fully set forth herein.

31.   In or about mid-2006, as explained above, Plaintiffs and Defendant TIAA intended

to, and did in fact, create a joint venture.

32.   Plaintiffs had every expectation that both phases of the joint venture's project would

be built, fully leased and profitable.  Plaintiffs believed that Defendant TIAA shared in that

expectation.  Although it was a two phase project, the design and construction of Project Phase I

was connected to Project Phase II in several ways.  For example, under the PUD, the second

building had to be physically connected to the first building.  To obtain the necessary approvals

for Project Phase I, the parties were required to, and in fact did, take land from the Phase II

Property and paved over it to  construct twenty-five additional parking spaces dedicated to

Project Phase I.  The Project Phase I building includes a wall constructed in such a way that it

was to be the common, connecting wall between the first and the second buildings.  One hundred

percent, approximately 10,000 yards, of the dirt taken from the Phase I Property has been

stockpiled on the Phase II Property.  Portions of the Phase II Property have also been dedicated

for use as a dog park for the benefit of Project Phase I.   At all times the joint venturers treated

the Phase I Property and the Phase II property as one contiguous development parcel.

33.   Plaintiffs and Defendant TIAA, as joint venturers, agreed that they would share in

the profitability of Phase I Project and Phase II Project.  They also agreed that they would share

control of the venture in that Defendant TIAA (or an entity on its behalf)  would be in control of

the financial components of two phases and that Plaintiffs would be in control of the operational

aspects of the two phases of the project.  That division of control was manifested as to Project

11

Phase I in the LLC Agreement's appointment of Plaintiff Union North as the Operational

Member of the Company and the appointment of Defendant TIAA-Union as the Investment

Member of the Company.  That same division of control was manifested as to Project Phase II in

the Letter of Intent's provision that Plaintiff K St. Developers would be the Managing Member

of the joint venture in charge of day-to-day operations and that major decisions with regard to

Project Phase II would be as set forth in the LLC agreement for Project Phase I.

 34.  The Plaintiffs and Defendant TIAA did not intend that the LLC Agreement for

Project Phase I, the Development Agreement for Project Phase I, the Letter of Intent for Phase II,

or the limited liability agreement contemplated for Project Phase II, would replace the

overarching joint venture agreed to by Plaintiffs and Defendant TIAA in 2006.  Rather, the

parties intended that those agreements were in furtherance of the joint venture.

 35.  As a joint venturer, Defendant TIAA owed fiduciary duties to the joint venture and

to Plaintiffs of loyalty and the utmost good faith, fairness and honesty with respect to the two

phase redevelopment project.

 36.  Defendant TIAA breached its fiduciary duty to Plaintiffs by the actions alleged

herein, including without limitation, causing the removal of Plaintiff Union North as Operating

Member under the LLC Agreement even though grounds did not in fact exist which constituted

"Removal Events;" by unreasonably reducing the market valuation of the Phase II Property by

$12 million; and by refusing to go forward with Project Phase II.

 37.  The Defendant's breach of fiduciary duty as aforesaid proximately caused Plaintiffs

to suffer damage.

WHEREFORE, Plaintiffs  K Street Developers, LLC and Union North Phase I, LLC request that judgment be rendered in their favor and against Defendant Teachers Insurance and Annuity Association in the amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest, attorneys fees and costs, and such other and further relief as may be appropriate.

## COUNT II
### BREACH OF FIDUCIARY DUTY - DEFENDANT TIAA-UNION

38.  Plaintiff Union North realleges Paragraphs 1 through 37 as if fully set forth herein.

39.  Plaintiff Union North and Defendant TIAA-Union are members of a limited liability company organized pursuant to Delaware law.

40.  Members of limited liability companies organized under Delaware law owe each other fiduciary duties of loyalty, good faith and fair dealing, and due care.

41.  Defendant TIAA-Union breached its fiduciary duties when it ousted Plaintiff Union North as the Operating Member for reasons that are pretextual and constituted a bad faith exercise of discretion.

42.  The Defendant's breach of fiduciary duty as aforesaid proximately caused Plaintiff Union North to suffer damage.

WHEREFORE, Plaintiff Union North Phase I, LLC requests that judgment be rendered in its favor and against Defendant TIAA-Union Place Phase I, LLC in an amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest, attorneys fees and costs, and such other and further relief as may be appropriate.

## COUNT III

13

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY - DEFENDANT TIAA

43.   Plaintiff Union North realleges Paragraphs 1 through 42 as if fully set forth herein.

44.   As explained in Count II, Defendant TIAA-Union breached the fiduciary duties it owed, in its capacity as the Investment Member of the Company, to the Operating Member, Plaintiff Union North.

45.   Defendant TIAA knew that Defendant TIAA-Union and Plaintiff Union North were members of the same limited liability company.

46.   Defendant TIAA also knew or should have known that Defendant TIAA-Union, in purporting to remove Plaintiff Union North for pretextual reasons, was in breach of its fiduciary duties.

47.   Defendant TIAA assisted Defendant TIAA-Union in the breach of its fiduciary duties by, on information and belief, directing Defendant TIAA-Union to remove Plaintiff Union North as the Operational Member of the Company for pretextual reasons.

48.   Defendant TIAA's aiding and abetting Defendant TIAA-Union in the breach of its fiduciary duties proximately caused Plaintiff Union North to suffer damage.

WHEREFORE, Plaintiff Union North Phase I LLC requests that judgment be rendered in its favor and against Defendant Teachers Insurance and Annuity Association in the amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest, attorneys fees and costs, and such other and further relief as may be appropriate.

### COUNT IV

14

## BREACH OF CONTRACT - DEFENDANT TIAA-UNION

49.   Plaintiff Union North realleges Paragraphs 1 through 48 as if fully set forth herein.

50.   Plaintiff Union North at all times pertinent hereto performed its duties and obligations under the LLC Agreement.

51.   In its February 22, 2012 letter, Defendant TIAA-Union purports to remove Plaintiff Union North as the Operating Member for what Defendant TIAA-Union alleges are Removal Events as that term is defined by Section 4.4(a) of the LLC Agreement.  Each of the reasons given in the February 22, 2012 letter are pretextual.  Defendant TIAA-Union does not have grounds, in fact, on which to base its purported removal of Plaintiff Union North as Operating Member, as explained above in Paragraph 29.

52. Defendant TIAA-Union's purported removal of Plaintiff Union North as Operating Member in the absence of facts giving rise to a Removal Event constitutes a material breach of the LLC Agreement.  The purported conduct on which the removal was based did not occur.

53.  Defendant TIAA-Union's material breach of the LLC Agreement has proximately caused Plaintiff Union North to suffer damages.

WHEREFORE, Plaintiff Union North Phase I, LLC requests that judgment be rendered in its favor and against Defendant TIAA Union Place I, LLC in the amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest, attorneys fees and costs,  and such other and further relief as may be appropriate.

## COUNT V
## PROMISSORY ESTOPPEL - ALL DEFENDANTS

15

54.  Plaintiff K St. Developers realleges as if fully set forth herein Paragraphs 1 through 53.

55.  The Defendants understood that the development of the two phase residential project depended on the acquisition of land on which to construct the buildings.  Defendants were also on notice that the District of Columbia had approved the two-phase project as a Planned Unit Development and that the Planned Unit Development required the two buildings to be physically connected.  The Defendants also understood that the success of Project Phase II would be dependent on starting Phase II promptly after the completion of Project Phase I so that Project Phase II could capitalize on the success of Project Phase I. The Defendants' course of dealing constituted a promise by Defendants that if Plaintiff K St. Developer contributed the Phase I Property, that Phase II would be completed.

56.  Defendants reasonably expected to induce action or forbearance by Plaintiff K St. Developer.

57.  Plaintiff K St. Developer  reasonably relied on the Defendants' promises and took action to its detriment by conveying the Phase I Property to the Company for its use for the construction of Project Phase I.   In addition, Plaintiff K St. Developer dedicated portions of the Phase II Property for storage of the dirt from Project Phase I; for use as a dog park for the benefit of Project Phase I; and for twenty-five parking spaces for the benefit of Project Phase I.

58.  The promise by Defendants binds the parties because injustice can be avoided only by its enforcement.   In reliance on representations made by the Defendants that Project Phase II would in fact be undertaken, Plaintiff K St. Developers agreed that it would not present Project Phase II to the market.

WHEREFORE, Plaintiff K Street Developers LLC requests that judgment be rendered in its favor and against Defendants in the amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest, attorneys fees and costs,  and such other and further relief as may be appropriate.

**COUNT VI**
**UNJUST ENRICHMENT - DEFENDANTS TIAA and TIAA-Union**

59.  Plaintiffs K St. Developers and Union North reallege as if fully set forth herein Paragraphs 1 through 58.

60.  The Defendants TIAA and TIAA-Union have been benefitted by the transactions described herein.  In furtherance of the joint venture and the LLC Agreement, Plaintiff K St. Developers transferred the Phase I Property to the Company and Plaintiff Union North entered into the LLC Agreement.  By removing Plaintiff Union North as the Operating Member of the Company, Defendants TIAA and TIAA-Union have retained for themselves all the benefits resulting from the development of Project Phase I.

61.  Not only have the Defendants TIAA and TIAA-Union retained all the benefits of their bargain, the Plaintiffs have suffered a detriment in the loss of the Phase I Property, the loss of their expectations which were to flow from Plaintiff Union North's membership in the Company, the loss of the ability to capitalize on the success of Project Phase I. Defendants' retention of their benefits from the transaction in the face of the detriments to Plaintiffs would be unjust, and the loss of portions of the Phase II Property taken for the benefit of Project Phase I.

62.  Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs K Street Developers LLC and Union North Phase I, LLC requests that judgment be rendered in its favor and against Defendants Teachers Insurance and

Annuity Association and TIAA Union Place I, LLC in the amount of not less than One Hundred

Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest,

attorneys fees and costs,  and such other and further relief as may be appropriate.

### COUNT VII
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS -
### DEFENDANTS TIAA-UNION AND TIAA-CREF

63.  Plaintiffs reallege as if fully set forth herein Paragraphs 1 through 62.

64.  A valid business relationship exist between Plaintiffs and Defendant TIAA for the

development of the project at the Phase I and Phase II Properties.

65.  Defendants TIAA-Union and TIAA-CREF know that the business relationship

referred to in Paragraph 64 exists.

66. Defendant TIAA-Union negligently and/or intentionally interfered with the

relationship by purporting to remove Plaintiff Urban North as Operational Member of the

Company, thereby terminating Plaintiff Urban North's participation in Project Phase I and

terminating the overarching business relationship between the Plaintiffs and Defendant TIAA for

the development and on-going participation in both Project Phase I and Project Phase II.

Defendant TIAA-CREF negligently and/or intentionally interfered with the relationship by

refusing to enter into a limited liability agreement with Plaintiff K St. Developers for Project

Phase II.

67.  As a proximate result of the interference by Defendants TIAA-Union and TIAA-

CREF in the business relationship between Plaintiffs and Defendant TIAA, Plaintiffs have been

damaged.

WHEREFORE, Plaintiffs K Street Developers LLC and Union North Phase I, LLC requests that judgment be rendered in its favor and against Defendants TIAA Union Place Phase I, LLC and TIAA-CREF Global Investments, LLC in an amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest, attorneys fees and costs, and such other and further relief as may be appropriate.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS - DEFENDANT TIAA

68.  Plaintiff K St. Developers realleges as if fully set forth herein Paragraphs 1 through 67.

69.  A valid prospective contractual and business relationship existed between Plaintiff K St. Developers and Defendant TIAA-CREF as to the Project Phase II.

70.  Defendant TIAA knows that the prospective business relationship referred to in Paragraph 65 exists.

71.  Defendant TIAA intentionally interfered with the relationship by causing Defendant TIAA-CREF not to form a limited liability company with Plaintiff K St. Developers for  Project Phase II.

72.  As a proximate result of the interference by Defendant TIAA in the prospective business relationship between Plaintiff K St. Developers and Defendant TIAA-CREF, Plaintiff has been damaged.

WHEREFORE, Plaintiff K Street Developers LLC requests that judgment be rendered in its favor and against Defendant Teachers Insurance and Annuity Association in the amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus

pre-judgment interest, attorneys fees and costs,  and such other and further relief as may be
appropriate.

**COUNT IX**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING -**
**DEFENDANT TIAA-UNION**

73.  Plaintiff Union North realleges as if fully set forth herein Paragraphs 1 through 72.

74.  As the Investing Member of the Company, Defendant TIAA-Union had an implied
covenant to deal fairly with Plaintiff Union North and in good faith.

75.  Defendant TIAA-Union's implied covenant of good faith and fair dealing extended
to its decision-making under the LLC Agreement.

76.  Section 4.1(b) of the LLC Agreement granted to Defendant TIAA-Union decision
making authority over "Major Decisions" as that term is defined in the LLC Agreement.

77.  On February 22, 2012 Plaintiff Union North, through counsel, requested approval to
extend the financing on the Loree Grand project through the Second Maturity Date of May 23,
2014.

78.  The lender had already approved the financing extension and there was no
reasonable basis for Defendant TIAA-Union to withhold its approval of the request by Plaintiff
Union North.  However, Defendant TIAA-Union did withhold its approval.  Its decision to do so
was arbitrary, in bad faith and unreasonable.

79.  In withholding its approval of the financing extension, Defendant TIAA-Union was
motivated by one or more of the following: (1) retaliation for the incident described above in

Paragraph 14 regarding Trevor Michael; (2) force Plaintiff Union North into a default situation;

(3) take Project Phase I over for its own benefit.

80.   Section 4.4(a) provides that the Operating Member (Plaintiff Union North) "may" be

removed under circumstances constituting a Removal Event as that term is defined by Section

4.4 of the LLC Agreement.  Defendant TIAA-Union was required to exercise its discretionary

authority under Section 4.4(a) in good faith, fairly and reasonably.

81.   On February 22, 2012, Defendant TIAA-Union purported to remove Plaintiff Union

North as the Operating Member of the Company.  It asserted that Plaintiff Union North had

engaged in conduct constituting Removal Events.  However, Defendant TIAA-Union had no

reasonable basis on which to exercise its discretionary authority to remove Plaintiff Union North

as a member of the company.

82.   Defendant TIAA-Union's exercise of its discretionary removal authority was not

reasonably based on the LLC Agreement and instead was unreasonable, arbitrary and done in

bad faith.  Project Phase I was already completed and was successful and Project Phase II was

underway.  Portions of the Phase II Property had already been used for the benefit of Project

Phase I.  Plaintiff Union North had not engaged in any conduct on which Defendant TIAA-

Union could have, in good faith, exercised its discretionary authority to remove Plaintiff Union

North as the Operating Member of the Company.  Defendant TIAA-Union was motivated by one

or more of the following in removing Plaintiff Union North as the Operating Member of the

Company: (1) retaliation for the incident described above in Paragraph 14 regarding Trevor

Michael; (2) to take over for its own benefit Project Phase I; (3) to benefit from the dedication of

portions of the Phase II Property to  Project Phase I without payment of consideration.

83.  By its foregoing actions, Defendant TIAA-Union has breached the implied covenant of good faith and fair dealing and Plaintiff Union North has been proximately damaged thereby.

WHEREFORE, Plaintiff Union North Phase I LLC requests that judgment be rendered in its favor and against Defendant TIAA Union Place I, LLC in the amount of not less than One Hundred Million Dollars ($100,000,000.00) in compensatory damages, plus pre-judgment interest, attorneys fees and costs,  and such other and further relief as may be appropriate.


**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by jury.

Respectfully submitted,

COOTER, MANGOLD, DECKELBAUM
& KARAS, LLP

/s/ Dale A. Cooter
Dale A. Cooter,  D.C. Bar No. 227454
Donna S. Mangold, D.C. Bar No. 358851
Stephen Nichols, D.C. Bar No. 429686
Fernando Amarillas, D.C. Bar No. 974858
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
(202) 537-0700
Email: efiling@cootermangold.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of May, 2012 a copy of the foregoing First

Amended Complaint was served by first-class mail, postage pre-paid, and electronic mail on:


Rebecca Woods, Esq.
SEYFARTH SHAW, LLP
975 F Street, NW
Washington, DC 20004
*rwoods@seyfarth.com*


/s/ Stephen Nichols
Stephen Nichols