# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

K STREET DEVELOPERS, LLC,                         )
                                                  )
and                                               )
                                                  )
UNION NORTH PHASE I, LLC,                          )
                                                  )
           Plaintiffs,                             )
                                                  )
v.                                                )   Case No. 1:12-cv-00666
                                                  )
TEACHERS INSURANCE AND ANNUITY                     )
ASSOCIATION OF AMERICA,                            )
                                                  )
and                                               )
                                                  )
TIAA UNION PLACE PHASE I, LLC,                      )
                                                  )
and                                               )
                                                  )
TIAA-CREF GLOBAL INVESTMENTS, LLC,                 )
                                                  )
           Defendants.                             )
_____ )

## SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Defendants Teachers Insurance and Annuity Association of America ("TIAA"), TIAA

Union Place Phase I, LLC ("TIAA Union"), and TIAA-CREF Global Investments, LLC ("TIAA

Global") (collectively, "Defendants"), by their undersigned counsel, state as follows as their

Second Amended Answer, Affirmative Defenses, Counterclaims and Third-Party Claims to

Plaintiffs K Street Developers, LLC ("K Street") and Union North Phase I, LLC's ("Union

North") (collectively, "Plaintiffs") First Amended Complaint.

## JURISDICTION

1.      Defendants admit that the Court has jurisdiction over Plaintiffs' claims.

## PARTIES

2.      Defendants admit the first sentence of this paragraph.  Defendants are without knowledge and information sufficient to form a belief as to the remaining allegations of this paragraph and therefore deny the allegations.

3.      Defendants admit that Union North is a limited liability company organized under the laws of the District of Columbia.  Defendants are without knowledge and information sufficient to form a belief as to the remaining allegation of this paragraph and therefore deny the allegation.

4.      Admit.

5.      Admit.

6.      Admit.

## THE JOINT VENTURE

7.      Defendants are without knowledge and information sufficient to form a belief as to the allegations of this paragraph and therefore deny the allegations.  In addition, the last three sentences of this paragraph are legal conclusions, to which no response is required.  To the extent that a response is required, deny.

8.      Defendants are without knowledge and information sufficient to form a belief as to the allegations of the first sentence of this paragraph and therefore deny the allegations.  Defendants deny the allegations of the second, third, fourth, fifth, sixth, seventh, and eighth sentences of this paragraph.  The allegations of the ninth and tenth sentence of this paragraph are legal conclusions, to which no response is required.  To the extent that a response is required, deny.

## THE PROJECT - PHASE I

9.      Defendants deny the allegations of the first sentence of this paragraph.  Defendants admit the allegations of the second and fourth sentences of this paragraph.  Defendants admit that TIAA Union is the Investment Member, but deny that Union North is the Operating Member.

2

The allegations of the fifth sentence are characterizations of a document, which speaks for itself, or are legal conclusions, to which no response is required.  To the extent that a response is required, Defendants admit that the LLC Agreement states that K Street, CASCO, Inc. Three Cee Investors, LLC, and Union North Corporation are "the transferor of the [Phase I] Property" to Union Place Phase I, LLC ("Union Place"), but Defendants are without knowledge and information sufficient to form a belief as to the remaining allegations of the fifth sentence and therefore deny the allegations.

10.     Defendants admit that, on or about January 31, 2007, Union North and Union Place entered into a Development Agreement.  The remaining allegations of this paragraph are characterizations of a document, which speaks for itself, or are legal conclusions, to which no response is required.  To the extent that a response is required, deny.

11.     Deny.

12.     The first two sentences of this paragraph are characterizations of documents, which speak for themselves, or are legal conclusions, to which no response is required.  To the extent that a response is required, deny.  As to the last sentence, deny.

13.     Defendants are without knowledge and information sufficient to form a belief as to the allegations of this paragraph and therefore deny the allegations.

14.     Deny.

15.     Deny

16.     Deny.

### THE PROJECT - PHASE II

17.     Plaintiffs' allegation in the first two sentences are denied.  Plaintiffs' allegation in the third sentence of this paragraph as to the PUD requirements is a characterization of a document, which speaks for itself, or is a legal conclusion, to which no response is required.  To the extent

3

that a response is required, deny.  Defendants are without knowledge and information sufficient to form a belief as to the allegation in the fourth sentence of this paragraph that the building construction on the Phase I Property was purposely constructed in a way that the building to be constructed on the Phase II Property could in fact be physically connected to it.  Defendants deny the remaining allegations of this paragraph.

18.     Defendants are without knowledge and information sufficient to form a belief as to the allegation that the Phase II Property is owned by K Street and therefore deny the allegation.  Defendants deny the remaining allegations of this paragraph.

19.     Plaintiffs' allegation about the Letter of Intent is a characterization of a document, which speaks for itself, or is a legal conclusion, to which no response is required.  To the extent that a response is required, deny.  Defendants deny the remaining allegations of this paragraph.

20.     Plaintiffs' allegations about the Letter of Intent are characterizations of a document, which speaks for itself, or are legal conclusions, to which no response is required.  To the extent that a response is required, deny.  Defendants deny the remaining allegations of this paragraph.

21.     Plaintiffs' allegations about the LLC Agreement for the Project Phase I development are characterizations of a document, which speaks for itself, or are legal conclusions, to which no response is required.  To the extent that a response is required, Defendants admit that the LLC Agreement provides that K Street gave TIAA Union a right of first offer to purchase the Phase II Property.  Plaintiffs' allegations that TIAA and TIAA Union and TIAA and TIAA Global are related business entities are legal conclusions, to which no response is required.  To the extent that a response is required, Defendants admit that TIAA and TIAA Union and TIAA and TIAA Global are affiliated.  Defendants deny the remaining allegations of this paragraph.

4

22.     Defendants deny the allegation that the parties began to implement Project Phase II.

Defendants are without knowledge and information sufficient to form a belief as to the remaining

allegations and therefore denies the allegations.

## THE DEFENDANTS' NOTIFICATION OF REMOVAL

23.     The allegations of this paragraph are characterizations of documents, which speak for

themselves, or are legal conclusions, to which no response is required.  To the extent that a

response is required, Defendants are without knowledge and information sufficient to form a

belief as to the allegations and therefore deny the allegations.

24.     Plaintiffs' allegations that the Project Phase I had been completed, that Defendants owed

fiduciary duties, and that Defendants were joint venturers and members of Union Place are legal

conclusions, to which no response is required.  To the extent that a response is required,

Defendants deny the allegations except that Defendants admit that TIAA Union is a member of

Union Place.  Defendants deny the remaining allegations.

25.     Plaintiffs' allegations as to a letter and email are characterizations of documents, which

speak for themselves, or are legal conclusions, to which no response is required.  To the extent

that a response is required, Defendants admit that TIAA Union's counsel sent Union North a

letter dated February 22, 2012, stating that TIAA Union "hereby elects to remove [Union North]

as 'Operating Member' effective as of February 27, 2012" for the reasons given in the letter.

Defendants deny the remaining allegations.

26.     Defendants admit that TIAA Union and its counsel met with Ronald Cohen, among

others, on February 29, 2012, in Washington, D.C.  Plaintiffs' allegation about the contents of a

fax is a characterization of a document, which speaks for itself.  To the extent that a response is

required, Defendants admit that Union North sent TIAA Union's counsel a letter requesting a

meeting before removal of Union North as Operating Member.  Defendants deny the remaining allegations of this paragraph.

27.    Plaintiffs' allegations are a characterization of a document, which speaks for itself, or are legal conclusions, to which no response is required.  To the extent that a response is required, Defendants admit that Union North's conduct following the February 29, 2012 meeting was not satisfactory and that TIAA Union's counsel sent Union North a letter dated March 9, 2012, stating that Union North "is hereby removed as Operating Member" and that TIAA Union "shall act as the Operating Member."  To the extent that a response is required, Defendants deny the remaining allegations.

28.    Defendants admit that TIAA Union's counsel sent Union North a letter dated February 22, 2012, stating that TIAA Union "hereby elects to remove [Union North] as 'Operating Member' effective as of February 27, 2012."  Defendants deny the implicit allegation that they have any legal obligation to participate in Project Phase II.  Defendants are without knowledge and information sufficient to form a belief as to whether Plaintiffs have progressed on Project Phase II since February 22, 2012, and therefore deny the remaining allegation.

29.    Defendants admit that Plaintiffs dispute that Union North was properly removed as operating member of Union Place.

(a)    Defendants admit that Union North denies that the "Removal Events" identified in the February 22, 2012 letter occurred.  Defendants deny that the "Removal Events" were fabricated.

(b)    Deny.

6

(c)      Defendants admit that Union North denies that it misapplied funds derived from

the Phase I Property and that Union North denies that Ronald Cohen Management Company

received an overpayment.  Defendants deny the remaining allegations of this subparagraph.

(d)      Defendants admit that Union North denies that it intentionally commingled funds

derived from the Phase I Property.  Defendants deny the remaining allegations of this

subparagraph.

(e)      Defendants admit that Union North denies that it caused Union Place to breach

the terms of the Westdeutsche loan agreement, that Union North denies that it wrongfully

executed a change order in the ADC Builders contract, that Union North denies that it misused

funds to pay for expenses of Cohen affiliates, that Union North denies that it failed to use

commercially reasonable efforts to minimize operating expenses or to conduct the affairs of

Union Place in accordance with good industry practice.  To the extent that Plaintiffs are alleging

that events that Union North denies did not occur, Defendants deny those allegations.

## COUNT I
## BREACH OF FIDUCIARY DUTY - DEFENDANT TIAA

30.      Defendants incorporate their responses to ¶¶ 1-29 herein by reference.

31.      Deny.

32.      Defendants deny the allegations of the first, second, third, and last sentences of this

paragraph.  The fourth sentence of this paragraph is a characterization of a document, which

speaks for itself, or is a legal conclusion, to which no response is required.  To the extent that a

response is required, deny.  Defendants lack knowledge and information sufficient to form a

belief as to the allegations of the fifth, sixth, seventh, and eighth sentences of this paragraph and

therefore deny the allegations.

7

33.     Defendants admit that TIAA Union is the Investment Member of Union Place and that Union North was the Operating Member of Union Place before Union North was removed. Defendants deny the remaining allegations of this paragraph.

34.     Deny.

35.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

36.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

37.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

Defendants deny that Plaintiffs are entitled to the relief requested in their unnumbered WHEREFORE clause.

## COUNT II
## BREACH OF FIDUCIARY DUTY - DEFENDANT TIAA UNION

38.     Defendants incorporate their responses to ¶¶ 1-37 herein by reference.

39.     Deny.

40.     The allegations of this paragraph are a legal conclusion, to which no response is required. To the extent that a response is required, deny.

41.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

42.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

Defendants deny that Plaintiffs are entitled to the relief requested in their unnumbered WHEREFORE clause.

15661500v.3

## COUNT III
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY - DEFENDANT TIAA

The claims alleged by ¶¶ 43-48 were dismissed by the Court pursuant to its Order on Defendants' Partial Motion To Dismiss (Dkt. 17) entered September 18, 2012.  To the extent that a response is required, Defendants deny the allegations of ¶¶ 43-48.

## COUNT IV
## BREACH OF CONTRACT - DEFENDANT TIAA UNION

49.     Defendants incorporate their responses to ¶¶ 1-48 herein by reference.

50.     Deny.

51.     Defendants admit that TIAA Union removed Union North as Union Place's Operating Member.  As to the remaining allegations of this paragraph, deny.

52.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

53.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

Defendants deny that Plaintiffs are entitled to the relief requested in their unnumbered WHEREFORE clause.

## COUNT V
## PROMISSORY ESTOPPEL - ALL DEFENDANTS

The claims alleged by ¶¶ 54-58 were dismissed by the Court pursuant to its Order on Defendants' Partial Motion To Dismiss (Dkt. 17) entered September 18, 2012.  To the extent that a response is required, Defendants deny the allegations of ¶¶ 54-58.

15661500v.3

## COUNT VI
### UNJUST ENRICHMENT - DEFENDANTS TIAA AND TIAA UNION

The claims alleged by ¶¶ 59-62 were dismissed by the Court pursuant to its Order on Defendants' Partial Motion To Dismiss (Dkt. 17) entered September 18, 2012.  To the extent that a response is required, Defendants deny the allegations of ¶¶ 59-62.

## COUNT VII
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS - DEFENDANTS TIAA UNION AND TIAA GLOBAL

The claims alleged by ¶¶ 63-67 were dismissed by the Court pursuant to its Order on Defendants' Partial Motion To Dismiss (Dkt. 17) entered September 18, 2012.  To the extent that a response is required, Defendants deny the allegations of ¶¶ 63-67.

## COUNT VIII
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS - DEFENDANT TIAA

The claims alleged by ¶¶ 68-72 were dismissed by the Court pursuant to its Order on Defendants' Partial Motion To Dismiss (Dkt. 17) entered September 18, 2012.  To the extent that a response is required, Defendants deny the allegations of ¶¶ 68-72.

## COUNT IX
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - DEFENDANT TIAA UNION

73.     Defendants incorporate their responses to ¶¶ 1-72 herein by reference.

74.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

75.     The allegations of this paragraph constitute a legal conclusion, to which no response is required.  To the extent that a response is required, deny.

15661500v.3

76.     The allegation of this paragraph is a characterization of a document, which speaks for

itself, or is a legal conclusion, to which no response is required.  To the extent that a response is

required, Defendants admit that § 4.1(b) of the LLC Agreement states, in part:

> Except for management of the routine, day-to-day affairs of the
> Company by Operating Member consistent with the then
> applicable Business Plan and Budget as provided in Section 4.1(a),
> all other decisions regarding the Company and its business,
> operations and assets ("**Major Decisions**") … shall be made by the
> Investor Member alone ….

77.     Defendants are without knowledge and information sufficient to form a belief as to the

allegation of this paragraph and therefore deny the allegation.

78.     Deny.

79.     Deny.

80.     The allegations of this paragraph are characterizations of a document, which speaks for

itself, or are legal conclusions, to which no response is required.  To the extent that a response is

required, deny.

81.     Defendants admit that TIAA Union removed Union North as Union Place's Operating

Member and that Union North engaged in conduct justifying removal.  The remaining allegations

of this paragraph are legal conclusions, to which no response is required.  To the extent that a

response is required, deny.

82.     Defendants deny the first, fourth, and fifth sentences of this paragraph.  Defendants are

without knowledge and information sufficient to form a belief as to the allegations of the second

and third sentences of this paragraph and therefore deny the allegations.  Defendants deny the

implicit allegation that they had any obligation to Project Phase II.

83.     The allegations of this paragraph constitute a legal conclusion, to which no response is

required.  To the extent that a response is required, deny.

Defendants deny that Plaintiffs are entitled to the relief requested in their unnumbered WHEREFORE clause.

## JURY DEMAND

Plaintiff Union North waived its right to a trial by jury in the event of a dispute arising under the LLC Agreement. *See* LLC Agreement § 12.2, Exhibit A.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in part because the Amended Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in whole or in part by Plaintiffs' own acts, omissions, and non-performance.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in whole or in part by the LLC Agreement's terms and conditions.  The parties' rights and obligations are defined and controlled by the LLC Agreement's terms and conditions.  The LLC Agreement's terms and conditions are too numerous to itemize in these defenses and are therefore incorporated herein by reference as if fully set forth.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred because Plaintiffs have failed to mitigate their damages, if any.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in whole or in part by the doctrines of estoppel, waiver, and/or unclean hands.

12

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in whole or in part to the extent that they have committed fraud or have concealed or misrepresented a material fact related to the Phase I Property development, the Phase I Project, and/or the amounts (if any) owed to them.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs Amended Complaint is barred in whole or in part by the statute of frauds.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in whole or in part by the economic loss rule.

### NINTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in whole or in part or Plaintiffs' claimed damages are barred or must be reduced because Plaintiffs failed to satisfy contractual conditions precedent to Plaintiffs' right to recover amounts sought in the Amended Complaint.

### TENTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint is barred in whole or in part or Plaintiffs' claimed damages are barred or must be reduced to the extent that Plaintiffs have received payment from or belonging to Defendants or to Union Place.

### ELEVENTH AFFIRMATIVE DEFENSE

Defendants deny each and every allegation contained in Plaintiffs' Amended Complaint and their prayer for relief unless expressly admitted herein.  Defendants hereby raise and preserve each and every defense set forth in Rules 8, 9, and 12 of the Federal Rules of Civil Procedure and further reserve the right to raise such additional defenses as may appear appropriate following further discovery and factual development in the case.

15661500v.3

WHEREFORE, Defendants pray that Plaintiffs' Amended Complaint be dismissed with prejudice, that Plaintiffs shall take nothing, and that this Court grant Defendants such other relief as this Court deems just and proper.

## COUNTERCLAIMS AND THIRD PARTY CLAIMS

Defendant TIAA Union Place Phase I, LLC ("TIAA Union") and Third-Party Plaintiff Union Place Phase I, LLC ("Union Place"), by their undersigned counsel, and pursuant to Rules 13, 19, and 20 of the Federal Rules of Civil Procedure, file these Counterclaims and Third-Party Claims against Plaintiffs K Street Developers, LLC ("K Street") and Union North Phase I, LLC ("Union North") (collectively, "Plaintiffs") and Third-Party Defendants Ronald Cohen Management Company, Inc. ("RCMC"), ADC Builders, Inc. ("ADC"), PMAS, LLC, Ronald Cohen, and Alan Cohen (collectively, "Third-Party Defendants"), and state as follows:

## JURISDICTION AND VENUE

1.     The Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 because the claims arise under state law and are so related to the claims over which this Court has original jurisdiction that the claims form part of the same case or controversy under Article III of the United States Constitution.

2.     This action is ripe for adjudication.

3.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims at issue occurred in this district and the property that is the subject of the action is situated in this district.

15661500v.3

## PARTIES

4.      Plaintiff TIAA Union is a limited liability company organized and existing under the laws of Delaware.  TIAA Union's sole member is Teachers Insurance and Annuity Association of America, which is chartered in New York and has its principal place of business in New York.

5.      Third-Party Plaintiff Union Place is a limited liability company organized under the laws of Delaware.  Union Place's Operating Member and Investment Member is TIAA Union.

6.      Defendant Union North is a limited liability company organized under the laws of the District of Columbia.  Upon information and belief, the members of Union North are citizens of Maryland and/or the District of Columbia.

7.      Defendant K Street is a limited liability company organized under the laws of the District of Columbia.  Upon information and belief, the members of K Street are citizens of Maryland and/or the District of Columbia.  K Street is an Affiliate of Union North.

8.      Third-Party Defendant RCMC is a corporation organized under the laws of Maryland.  Upon information and belief, RCMC's principal place of business is in Maryland. RCMC is an Affiliate of Union North.

9.      Third-Party Defendant ADC is a corporation organized under the laws of Maryland.  Upon information and belief, ADC's principal place of business is in Maryland. ADC is an Affiliate of Union North.

10.      Upon information and belief, Third-Party Defendant PMAS is a limited liability company organized under the laws of Maryland.  Upon information and belief, the members of PMAS are citizens of Maryland and/or the District of Columbia.  PMAS is an Affiliate of Union North.

15661500v.3

11.    Upon information and belief, Ronald Cohen is a citizen and resident of Maryland. Ronald Cohen controls Union North, K Street, RCMC, and PMAS.

12.    Upon information and belief, Alan Cohen is a citizen and resident of Maryland. Alan Cohen controls ADC and RCMC, or is otherwise an agent or managerial employee of RCMC.

## FACTS

### The LLC Agreement

13.    On or about January 31, 2007, TIAA Union and Union North entered into an Limited Liability Agreement ("LLC Agreement") to form Union Place, a limited liability company organized under the laws of Delaware. *See* LLC Agreement, Exhibit A.

14.    Pursuant to the LLC Agreement, TIAA Union is the Investment Member of Union Place, and Union North was the initial Operating Member of Union Place. *See id.* Union North was removed as Operating Member in 2012 and replaced with TIAA Union as Operating Member.

15.    The purpose of Union Place was to acquire and develop the Phase I Property and such other things incident to such acquisition and development of the Phase I Property. *See id.* § 2.5.

16.    As the Operating Member, Union North was obligated to "manage the routine, day-to-day affairs of [Union Place] and to take all actions and make all expenditures with regard thereto, but only to the extent such specific action or expenditure is included in the then applicable Business Plan and Budget." *Id.* § 4.1(a).

17.    Union North "covenant[ed] and agree[d] to use all commercially reasonable efforts to minimize Operating Expenses and maximize the Operating Revenues of the [Phase I]

Property, in the best interest of [Union Place], and to exercise such efforts as a party not having a conflict of interest." *Id.*

18.     Union North "agree[d] to provide access to [TIAA Union] and its construction and other consultants … to any other information or material concerning the [Phase I] Project reasonably requested." *Id.*

19.     Except for "management of the routine, day-to-day affairs of [Union Place] by [Union North] consistent with the then applicable Business Plan and Budget," TIAA Union, as Investment Member, had the right to make "all other decisions regarding [Union Place] and its business, operations and assets ('**Major Decisions**')." *Id.* § 4.1(b).  Under the LLC Agreement, the right to make Major Decisions is committed to TIAA Union "alone." *Id.*

20.     TIAA Union's right to make Major Decisions includes, among other things, the right to make decisions, regarding the following:

(a)     Union Place's "assets, the acquisition or disposition of the [Phase I] Property, any mortgage, financing, refinancing, hypothecation or encumbrance of all or any part thereof, any acquisition of any real or personal property in addition to the [Phase I] Property";

(b)     "determination of the terms and conditions of all [Union Place] borrowings and the identity of the Lender thereof, any determination to amend any approved Loan documents";

(c)     "selection of banks for deposit of [Union Place] funds and the designation of Persons with signatory authority over withdrawal of such funds";

(d)     "the making of any expenditure or incurrence of any obligation by or for [Union Place] which is in excess of such line item in the then current Business Plan and Budget and for which there is no available contingency in either";

(e)     "the making of any loan or granting of any guaranty by [Union Place] to any Person";

(f)     "regarding Additional Capital Contributions";

(g)     "regarding development or redevelopment of the [Phase I] Property, development or redevelopment schedules, budgets and all other material matters relating to the acquisition or the development of the [Phase I] Property";

(h)     "approval of the plans for the [Phase I] Project and any material change orders or other modifications issued thereto";

(i)     "property managers, leasing contractors, management and leasing agreements, other material third party agreements, construction contracts, and brokerage agreements, including, specifically, approval of all Affiliates of [Union North] as contractors, subcontractors or service providers";

(j)     "all matters relating to the [Phase I] Property's compliance with environmental, health, access, and other applicable laws";

(k)     "taking of any legal action and any determination to settle any legal action, or making any decision with respect to legal or tax matters which could have a material adverse effect upon [Union Place], the [Phase I] Property or [TIAA Union]";

(l)     "selection of attorneys, accountants, engineers, environmental consultants or other professionals for the [Phase I] Property or [Union Place]; for avoidance of doubt,

15661500v.3

[TIAA Union] must approve any agreement with any such professional on behalf of

[Union Place]";

    (m)    "entering into or amending or granting any approval, consent or waiver

under any agreement with [Union North] or an Affiliate of [Union North]"; and

    (n)    "regarding the delivery of any written notice or communication to the

Lender under a Loan secured by a lien encumbering the [Phase I] Property."

*Id.* § 4.1(b)(1)-(4), (6), (8), (10)-(11), (15).

21.    Union North had a duty to "discharge its duties in a good and proper manner" and

to "in good faith use its best efforts … in accordance with good industry practice." *Id.* §

4.1(c)(1).

22.    The LLC Agreement required that "Ronald J. Cohen, and Alan D. Cohen shall

each be actively involved in the development, leasing and management of the [Phase I] Property

and shall devote a substantial amount of their time in such efforts." *Id.* § 4.1(c)(2).

23.    The LLC Agreement provided TIAA Union the right to remove Union North as

Operating Member if any of the following circumstances (a "Removal Event"), among others,

occurred:

    (a)    "if [Union North] or any Affiliate of [Union North] misapplies any funds

derived from the [Phase I] Property … or commingles funds derived from the [Phase I]

Property with other funds, unless the misapplication or commingling was not intentional,

the amount involved is not material and [Union North] (or its Affiliate) promptly

provides restitution thereof";

    (b)    "if [Union North] or any Affiliate of [Union North] commits fraud,

intentional misrepresentation, gross negligence or willful misconduct";

19

(c)     "[i]f any event of default under any Loan is due to the actions or inactions of [Union North] or any Affiliate of [Union North] (other than any actions taken by [Union North] or such Affiliate within the scope of its authority as Operating Member, in good faith and in best interest of [Union Place], and not in violation of this Agreement, and other than the failure of [Union North] to make payments under the Loan for which [Union Place] funds are not available), and such breach or event of default is not cured within any applicable cure period allowed under the applicable Loan Document(s) and the Lender takes actions to enforce its rights or remedies with respect to such default";

(d)     "the occurrence of a default by [Union North] under … Section 4.10," which provides (i) that Union North may not "engage in" or "possess interests in other business ventures" that affect TIAA Union's "rights with respect to Phase II as set forth in Section 4.14" and (ii) that all business ventures of any and every type and description arising out of or relating or pertaining to the [Phase I] Property or [Union Place] shall be for the account of [Union Place], and all revenues derived therefrom shall accrue solely to [Union Place]";

(e)     "the failure of [Union North] to make any Additional Capital Contribution as set forth in <u>Section 6.2</u> or Project Cost Overrun Payments as set forth in <u>Section 6.7</u>"; or

(f)     if [Union North] or any Affiliate of [Union North] commits any other breach of or default under this Agreement or any related agreement (including a breach of any representations or warranties), which breach or default continues for fifteen (15) days after receipt by such Person of notice of its occurrence from [TIAA Union]; provided, however, that if such breach is susceptible of cure but not capable of being cured within

20

such period, then such 15-day cure period shall be extended for an additional period not exceeding thirty (30) days as [TIAA Union] shall in good faith determine is required for the cure of such breach."

*Id.* §§ 4.4(a)(2)-(3), (6), (11)-(13), 4.10.

24.     The LLC Agreement granted TIAA Union the right, upon the occurrence of a Removal Event, to "appoint itself, an Investor Member Affiliate, or a third party as Operating Member." *Id.* § 4.4(c).

25.     The LLC Agreement provides that Union North "shall be reimbursed by [Union Place] for all reasonable out-of-pocket expenses actually incurred by it directly in conjunction with the business and affairs of [Union Place] … only to the extent set forth on an approved Business Plan and Budget" and that, upon request, Union North "shall provide reasonable supporting verification to [TIAA Union] for all expenditures for which any reimbursement is requested." *Id.* § 4.5.

26.     The LLC Agreement provides that, except as otherwise provided, "no compensatory payment shall be made by [Union Place] to [Union North] in connection with this Agreement or the transactions contemplated hereby, including for the services rendered to [Union Place] by [Union North] (or any member or employee of [Union North] as Operating Member." *Id.* § 4.6.

27.     The LLC Agreement provides that, "[e]xcept as otherwise expressly provided in Section 4.8, when any service or activity to be performed on behalf of [Union Place] is performed by an Affiliate of [Union North], the fee payable for such service or activity shall not exceed the fee which would be payable by [Union Place] to an unaffiliated third party of comparable standing providing the same services." *Id.* § 4.7.

28.     Section 4.8 of the LLC Agreement provides that Union Place "shall enter into agreements with [Union North] and its Affiliates respecting property management, leasing, development and asset management, if applicable, as indicated in the schedule attached as Exhibit E, with the applicable agreements attached as Exhibits E-1 and following." *See id.* § 4.8.

29.     The LLC Agreement provides that Union North "agrees to indemnify, defend and hold harmless [Union Place] and [TIAA Union] from any loss, claim, damage or liability resulting from the actions of [Union North] constituting (i) negligence not covered by insurance maintained by [Union Place]; (ii) gross negligence, (iii) willful misconduct or (iv) bad faith." *See id.* § 4.9.

30.     Pursuant to the LLC Agreement, Union North had a duty to "open and maintain (in the name of [Union Place]) a special bank account or accounts … in which shall be deposited all funds of [Union Place]" and to ensure that "[a]ll funds of [Union Place] shall be maintained and held in such special accounts, and shall not be commingled with the funds of any other person." *Id.* § 5.2.

31.     If and when TIAA Union made a call for Additional Capital Contributions, Union North had a duty to "make Capital Contributions to [Union Place] … in proportion to [Union North's] respective Capital Sharing Ratio[]." *Id.* § 6.2.

32.     Union North's Capital Sharing Ratio required Union North to make Additional Capital Contributions of 10% of any call for Capital Contributions. *Id.* § 1.1.

33.     Union North's failure to provide the required Additional Capital Contribution when TIAA Union has made its corresponding Capital Contribution constitutes a default by Union North. *Id.* § 6.3(a).

15661500v.3

34.     If Union North fails to provide the required Additional Capital Contribution, TIAA Union may advance (a "Default Loan") for all or part of the unpaid Capital Contribution and Union North shall be obligated to repay the Default Loan with interest.  *Id.*

### The Guaranty

35.     Because Union North was a Ronald Cohen-owned entity with no independent resources, Exhibit B to the LLC Agreement contained a form of an Operating Member Guaranty, whereby Ronald Cohen, in his individual capacity, agreed to guarantee the obligations and performance of Union North, as Operating Member, under the LLC Agreement.

36.     Simultaneous with the execution of the LLC Agreement, Ronald Cohen executed the Operating Member Guaranty, dated January 31, 2007 (the "Guaranty").  *See* Guaranty, Exhibit B.

37.     The Guaranty is a "guaranty of performance and payment and not merely a guaranty of collection" and entitles TIAA Union and Union Place to "proceed, collectively or individually, directly and at once, without notice, to enforce the Guaranteed Obligations against [Ronald Cohen] without proceeding against [Union North]."  *Id.* § 3.

38.     The Guaranty is continuing, and Ronald Cohen's obligations thereunder absolute.  *Id.* § 4.

39.     In particular, in Section 2 of the Guaranty, Ronald Cohen "absolutely, unconditionally and irrevocably guarantees" Union North's obligations under the LLC Agreement, defined therein as the "Guaranteed Obligations."

40.     Further, in Section 5 of the Guaranty, Ronald Cohen promises to reimburse TIAA Union and Union Place for all expenses, including reasonable counsel fees and disbursements in connection with both the collection and/or performance of the Guaranteed Obligations as well as the enforcement of the Guaranty.

23

**Misappropriation of Union Place Funds to Pay Phase II Property Taxes**

41.     The Phase II Property is a property adjacent to the Phase I Property.  Upon information and belief, the Phase II Property is owned by an entity affiliated with Ronald Cohen. Other than their adjacency, the Phase I Property and the Phase II Property have no relationship.

42.     In 2010 and 2011, Union North or its agent used proceeds from Union Place's construction loan for the Phase I Property development to pay real estate taxes on the Phase II Property for 2009 and 2010 and recorded the tax payments as construction costs of the Phase I Property development.

43.     On April 15, 2010, at least $150,930.92 was paid by PMAS for Phase II Property taxes, and, on April 26, 2010, at least $150,930.02 was reimbursed to PMAS by Union Place at the direction of Union North.

44.     On September 23, 2010, at least $156,029.90 was paid by PMAS for Phase II Property taxes, and, that same month, at least $156,029.90 was reimbursed to PMAS by Union Place at the direction of Union North.

45.     On April 25, 2011, at least $150,530.92 was drawn at the direction of Union North from Union Place's bank account and paid directly to the D.C. Treasurer for Phase II Property taxes.

46.     While conducting the 2010 audit, Union Place's auditor questioned Union North about the 2010 payments of the Phase II Property's 2009 taxes, and Union North told the auditor to make the amounts as an account receivable owed by Union North to Union Place.

47.     Union North never paid that account receivable for the 2009 Phase II Property taxes paid by Union Place in 2010.

15661500v.3

48.     While conducting the 2011 audit, Union Place's auditor discovered that Union North had not repaid the amounts paid for the 2009 Phase II Property taxes and had again used Union Place funds to pay the Phase II Property's 2010 taxes.

49.     The auditor questioned Union North about the 2010 and 2011 payments of the Phase II Property's 2009 and 2010 property taxes, and Union North told the auditor to reclassify the total amount paid in taxes as a rent expense owed to the Phase II Property.

50.     RCMC told the auditor that Union Place paid the Phase II Property's 2009 and 2010 taxes in lieu of paying rent for using the Phase II Property for parking, soil storage, and a dog park during the Phase I Property development.

51.     Neither Union North nor RCMC provided any agreement in which Union Place agreed to pay rent or to pay Phase II Property taxes in lieu of rent for using the Phase II Property.

52.     Union Place did not agree to pay rent or to pay Phase II Property taxes in lieu of rent for using the Phase II Property, and TIAA Union did not approve any agreement by Union Place to pay rent or to pay Phase II Property taxes in lieu of rent for using the Phase II Property.

53.     The Business Plan and Budget did not provide for payment of the Phase II Property taxes, and TIAA Union did not approve such payment.

54.     The LLC Agreement does not permit Union North to use Union Place's funds to pay property taxes on the Phase II Property.

## Misappropriation of Union Place's Tax Rebate

55.     In 2009, Union Place received a tax refund of at least $190,744 as a result of a change in tax rates.

56.     The refund was deposited to RCMC's account.

57.     When the auditor questioned Union North and RCMC about the refund, Alan Cohen responded on or about March 15, 2011 that: "[The tax refund] was apparently received

25

and mistakenly deposited into K Street Developers account.  Can you reclassify it as a receivable

from Cohen?"

58.     Union North knew that K Street or RCMC had received the refund and permitted

or negligently allowed K Street or RCMC to keep the refund.

59.     Union North, K Street, and RCMC have kept the refund and have not given the

refund to Union Place.

60.     The Business Plan and Budget did not provide for payment of the tax refund to K

Street or RCMC, and TIAA Union did not approve such payment.

61.     The LLC Agreement does not permit Union North to divert monies owed to

Union Place to other entities, and the LLC Agreement requires Union North to act in the best

interests of Union Place.

### Misappropriation of Union Place Funds by Overstating RCMC's Expenses

62.     Upon information and belief, RCMC overstated by at least $37,859.00 its

expenses incurred on behalf of Union Place and the Phase I Property development and

improperly took at least that amount as reimbursement for expenses that were not incurred.

63.     Union North knew that RCMC had overstated expenses and reimbursed itself for

expenses never incurred, and Union North either permitted or negligently allowed RCMC to take

and to keep the Union Place funds that were misappropriated by RCMC.

64.     The Business Plan and Budget did not provide for RCMC to receive payment for

expenses never incurred, and TIAA Union did not approve such payment.

65.     The LLC Agreement does not permit Union North to mismanage Union Place's

monies or divert them to other entities; the LLC Agreement requires Union North to act in the

best interests of Union Place; and the LLC Agreement requires that fees paid to Affiliates must

be comparable to those that would be paid to unaffiliated third parties.

26

66.     An unaffiliated third party would not have been reimbursed for expenses never incurred.

### Misappropriation of Union Place Funds
### for an Unwarranted ADC Builders General Conditions Fee

67.     ADC was the general contractor for the Phase I Property development.

68.     As part of its construction contract, ADC included a general conditions fee of $3.9 million for overhead.

69.     When change orders were issued, ADC charged a percentage of the additional construction costs as a general conditions fee and included that charge in the change order.

70.     As a matter of industry practice, general conditions fees are not charged as a separate fee but are tied to and included in the construction contract or change order as a percentage of the constructions costs.

71.     ADC included a general conditions fee in the construction contract for the Phase I Property and in every change order for the Phase I Property.

72.     Development of the Phase I Property was substantially or wholly complete in April 2010.

73.     Months later, in November 2010, Union North approved a change order providing for payment of $140,000 to ADC as a general conditions fee of $20,000 per month from April 2010 to November 2010.  The change order includes no other charge.  The $140,000 general conditions fee is not tied to any construction cost and is not a percentage of those costs.

74.     Although the change order for the $140,000 general conditions fee was issued in November 2010, it did not appear on Union Place's ledger until 2011.

75.     Union Place's auditor asked Union North and Alan Cohen of ADC about the $140,000 change order.  Neither Union North nor Alan Cohen would explain what services ADC provided for the fee.

76.     The Business Plan and Budget did not provide for payment of the $140,000 general conditions fee, and TIAA Union did not approve such payment.

77.     The LLC Agreement does not permit Union North to give money to ADC; the LLC Agreement requires Union North to act in the best interests of Union Place; and the LLC Agreement requires that fees paid to Affiliates must be comparable to those that would be paid to unaffiliated third parties.

78.     An unaffiliated third party would not have been given a $140,000 general conditions fee that was not tied to construction costs and was not a percentage of those costs.

### Causation of Loan Default

79.     TIAA Union and Union Place reallege ¶¶ 1-72 as if fully set forth herein.

80.     In 2012, Union Place defaulted on its loan for the Phase I Property development.

81.     Union Place's default was caused by Union North's improper conduct, including misappropriating Union Place's tax rebate and misappropriating Union Place's funds to pay the Phase II Property taxes, to pay RCMC for unincurred expenses, and to pay ADC for an unwarranted general conditions fee.

82.     As a result of Union North's improper conduct, Union Place could no longer make the representations and warranties required by the Lender.

83.     Consequently, Union Place could not satisfy the loan covenants to extend the term of the loan, and therefore, TIAA Union believed it had to pay off the loan balance of $52,632,323.92.

84.     To enable Union Place to pay the loan balance, TIAA Union issued a call for Additional Capital Contributions for the loan balance.

28

15661500v.3

85.     Under the LLC Agreement, TIAA Union's required contribution was at least $47,369,091.53 (or 90% of $52,632,323.92), and Union North's required contribution was at least $5,263,232.39 (or 10% of $52,632,323.92).

86.     Union North did not make its required contribution.

87.     As a result, TIAA Union contributed the full $52,632,323.92.

88.     Because TIAA Union contributed $5,263,232.39 to cover the amount that Union North failed to pay, those monies were unable to be invested and to earn interest.

89.     Union North's conduct that caused the loan default violated the LLC Agreement.

90.     Union North's failure to make its required contribution to the $52,632,323.92 capital call violated the LLC Agreement.

### Failure to Make Capital Contributions

91.     TIAA Union and Union Place reallege ¶¶ 73-85 as if fully set forth herein.

92.     As discussed in ¶¶ 73-84, TIAA Union issued a call for Additional Capital Contributions to pay Union Place's loan balance of $52,632,323.92.  Union North failed to make its required contribution to the $52,632,323.92 capital call.

93.     In addition, Union North failed to make other required capital contributions.

94.     The Loree Grand is the residential building built on the Phase I Property.

95.     The Phase I Property development included the construction of a restaurant space on the ground floor of the Loree Grand.  This construction was referred to as the "Kitchen on K" build-out.

96.     Union North issued calls for Additional Capital Contributions for the Kitchen on K build-out.  The capital calls for the Kitchen on K build-out totaled $862,901.98.

15661500v.3

97.     Under the LLC Agreement, TIAA Union's required contribution for the Kitchen

on K capital calls was at least $776,611.78 (or 90% of $862,901.98), and Union North's required

contribution was at least $86,290.20 (or 10% of $862,901.98).

98.     Union North did not make its required contribution.

99.     Union North's failure to make its required contribution to the capital calls for the

Kitchen on K build-out violated the LLC Agreement.

**Unapproved Settlement of FHA/ADA Litigation**

100.     In 2011, the Equal Rights Center ("ERC") filed a complaint against Union Place,

ADC, the Cohen Companies, and Square 699 N Phase I Developer, LLC ("Square 699") for

violations of the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA").

101.     The complaint alleged FHA and ADA violations at the Loree Grand and the

Velocity Condos, a property developed by ADC, the Cohen Companies, and Square 699.

102.     On January 11, 2012, ADC, the Cohen Companies, and Union Place settled the

claims relating to the Loree Grand property. *See* ERC Settlement, Exhibit B.

103.     The settlement was signed by Ronald Cohen as manager of Union North, as

operating member of Union Place. *See id.*

104.     The parties to the settlement agreed that Union Place would bear the liability for

the claims and the settlement. *See generally id.*

105.     Among other things, the parties agreed that Union Place would pay $45,000 to

ERC, would reimburse ERC for certain attorneys' fees, would make certain remediation

modifications to the Loree Grand, would pay tenants for temporary housing and other expenses

caused by the remediation work, and would pay for an ERC-approved consultant and his

inspections of the Loree Grand. *See id.* at 3-7.

15661500v.3

106.   The settlement agreement provided that the $45,000 was to be paid by Union Place within five business days of January 11, 2012. *See id.* at 7.

107.   The parties also agreed that "Respondents," defined as Union Place, ADC, and the Cohen Companies, would pay the costs of providing ERC training on the FHA and ADA to Eric L. Siegel, a Cohen Companies employee. *See id.* at 1-2.

108.   Other than agreeing that "Respondents" would pay Siegel's training costs, ADC and the Cohen Companies did not agree to pay any monies to ERC or third parties. All costs for the settlement were imposed on Union Place. *See generally* ERC Settlement.

109.   In addition, the parties agreed that the settlement did not resolve the claims related to Velocity Condos but that the parties "desire to continue working towards such a settlement." *Id.* at 9.

110.   As part of the consideration for the settlement payments by Union Place, ERC agreed that it would not add ADC as a defendant to the claims related to Velocity Condos, that ERC would not bring any such claims against ADC in the future, and that, when the parties settled the dispute as to Velocity Condos, ERC would include ADC in the general release. *See id.* at 9.

111.   Union North's settlement of the ERC claims against Union Place violated the LLC Agreement.

112.   The LLC Agreement expressly reserves to TIAA Union the rights to take any legal action on Union Place's behalf, to settle any and all legal claims by or against Union Place, to select attorneys to represent Union Place, and to select other professionals, including an FHA/ADA consultant for Union Place or the Phase I Property.

31

113.    Union North and ADC were entrusted with the appropriate design and construction of the Loree Grand.  Upon information and belief, the violations alleged in the ERC complaint were the result of Union North's and ADC's negligence and their failure to abide by the applicable standard of care.

114.    The LLC Agreement also requires that any expenditure by Union Place be authorized by TIAA Union.  The expenditures that Union Place agreed to in the settlement were not included in the then-applicable Business Plan and Budget and were not separately authorized by TIAA Union.

### Misappropriation of Union Place Funds for Political Contribution

115.    Upon information and belief, on March 21, 2011, RCMC, acting pursuant to Union North's direction, made a $500 political contribution from Union Place's account to Jack Evans, D.C. Council representative for Ward 2, and Jack Evans's foundation.

116.    The Phase I Property is in Ward 6.

117.    The political contribution violated the LLC Agreement.

118.    The political contribution was not in Union Place's best interests and was not an approved expenditure included in the then-applicable Business Plan and Budget.

### Union North's Conflict of Interest

119.    Section 4.10 of the LLC Agreement provides that "[e]xcept for [TIAA Union's] rights with respect to Phase II as set forth in Section § 4.14 hereof, each Member, and each Affiliate thereof, may engage in … other business ventures."

120.    Section 4.14 provides that TIAA Union be provided notice of K Street's intent to sell or develop the Phase II Property and provides TIAA Union with the right to invest in Phase II pursuant to the terms provided.

15661500v.3

121.    K Street, as putative owner of the Phase II Property, signed a "Joinder" Agreement as part of the LLC Agreement, in which K Street expressly agreed to the provisions of § 4.14.

122.    Union North's and K Street's position in the Amended Complaint -- that they engaged in a joint venture agreement regarding Phase II with an entity other than TIAA Union -- amounts to a pursuit of another "business venture" with respect to the Phase II Property.

123.    If, as Union North and K Street allege, Phase II were already the subject of a separate joint venture with an entity other than TIAA Union before the LLC Agreement was executed, then Union Place and K Street negotiated and executed the LLC Agreement, specifically §§ 4.10 and 4.14, in bad faith.

## COUNT I
## BREACH OF CONTRACT - UNION NORTH

124.    TIAA Union realleges ¶¶ 1-123 as if fully set forth herein.

125.    TIAA Union and Union North are parties to the LLC Agreement.

126.    Union North breached the LLC Agreement with TIAA Union by engaging in conduct that violated, among other sections, §§ 4.1, 4.2, 4.4, 4.5, 4.7, 4.8, 4.10, 4.14, 6.2, and 6.3 of the LLC Agreement.

127.    For example, Union North breached the LLC Agreement by, among other conduct, committing the following acts:

> (a)    misappropriating Union Place's funds to pay the 2009 and 2010 property taxes on the Phase II Property;

> (b)    misappropriating Union Place's tax refund and/or permitting or negligently allowing RCMC to keep Union Place's tax refund;

15661500v.3

    (c)    misappropriating Union Place's funds by permitting or negligently allowing RCMC to reimburse itself for expenses not incurred;

    (d)    misappropriating Union Place's funds by giving ADC $140,000 as a general conditions fee for work never performed;

    (e)    causing Union Place to default on its loan; and

    (f)    failing to make Additional Capital Contributions.

128.    Union North's breaches of the LLC Agreement caused TIAA Union to suffer damages of at least $6,175,217.59 plus pre-judgment interest on that amount.

WHEREFORE, TIAA Union requests that judgment be rendered in its favor and against Union North in an amount of not less than $6,175,217.59, or other amount to be proved at trial, in compensatory damages, plus pre-judgment interest, attorneys' fees and costs, and such other relief as may be appropriate.

## COUNT II
## BREACH OF FIDUCIARY DUTY -
## UNION NORTH, RCMC, RONALD COHEN, AND ALAN COHEN

129.    TIAA Union and Union Place reallege ¶¶ 1-128 as if fully set forth herein.

130.    Under the LLC Agreement, Union North was the Operating Member responsible for day-to-day operations of Union Place.  As the Operating Member, Union North was required to operate "in the best interest of" Union Place, to "in good faith use its best efforts" to manage Union Place, to "exercise such efforts as a party not having a conflict of interest," to "discharge its duties in a good and proper manner," to act "in accordance with good industry practice," and to use "all commercially reasonable efforts" to minimize expenses and maximize revenues for Union Place and TIAA Union.

34

131.    Under the LLC Agreement, Ronald Cohen and Alan Cohen were to devote a "substantial amount of time" and be "actively involved" in the "development, leasing and management of the [Phase I] Property."

132.    In accordance with the LLC Agreement, Ronald Cohen and Alan Cohen devoted substantial amounts of their time to the management of and were actively involved in the management of Union Place for the LLC Members, including TIAA Union.

133.    Pursuant to the LLC Agreement, Union Place and TIAA Union placed their trust in Union North to act consistent with Union Place's best interests and the best interests of the LLC Members, including TIAA Union.

134.    Union North, Ronald Cohen, and Alan Cohen each had managerial duties with respect to Union Place and, accordingly, had fiduciaries duties to Union Place and TIAA Union.

135.    Upon information and belief, Ronald Cohen and Alan Cohen exercised those managerial duties, in part, through RCMC, which they control.

136.    RCMC had responsibilities with respect to Union Place's financial accounts, and, as a result, RCMC had a fiduciary duty to Union Place and TIAA Union.

137.    Union Place and TIAA Union placed their trust in RCMC to act consistently with Union Place's best interests and the best interests of the LLC Members, including TIAA Union.

138.    Union North, RCMC, Ronald Cohen, and Alan Cohen breached their fiduciary duties to Union Place and TIAA Union by, among other conduct, engaging in, facilitating, approving, or allowing the following acts:

(a)     misappropriating Union Place's funds to pay the 2009 and 2010 property taxes on the Phase II Property;

(b)     misappropriating Union Place's tax refund;

(c)      misappropriating Union Place's funds by reimbursement of RCMC for

expenses not incurred;

(d)      misappropriating Union Place's funds by giving ADC $140,000 as a

general conditions fee for work never performed;

(e)      causing Union Place to default on its loan; and

(f)      failing to make Additional Capital Contributions.

139.    Union North's, RCMC's, Ronald Cohen's, and Alan Cohen's breaches of their

fiduciary duties caused TIAA Union and Union Place to suffer damages of at least $6,175,217.59

plus pre-judgment interest on that amount.

WHEREFORE, TIAA Union and Union Place request that judgment be rendered in their

favor and against Union North, RCMC, Ronald Cohen, and Alan Cohen in an amount of not less

than $826,094.74, or other amount to be proved at trial, in compensatory damages for Union

Place and not less than $6,175,217.59, or other amount to be proved at trial, in compensatory

damages for TIAA Union, plus pre-judgment interest, attorneys' fees and costs, and such other

relief as may be appropriate.

## COUNT III
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING - UNION NORTH

140.    TIAA Union realleges ¶¶ 1-139 as if fully set forth herein.

141.    TIAA Union and Union North are parties to the LLC Agreement.

142.    As the Operating Member of Union Place, Union North had an implied covenant

to act in good faith toward and to deal fairly with TIAA Union.

143.    Union North violated its duty of good faith and fair dealing by exercising its

discretion in a manner that deprived TIAA Union of the benefit of the bargain under the LLC

Agreement.

36

15661500v.3

144.    Union North exercised its discretion in a manner that promoted the interests of Union North and its Affiliates to the detriment of Union Place and TIAA Union.

145.    Union North acted to the detriment of TIAA Union's interests by, among other conduct, engaging in, facilitating, condoning, or allowing the following acts:

(a)    misappropriating Union Place's funds to pay the 2009 and 2010 property taxes on the Phase II Property;

(b)    misappropriating Union Place's tax refund;

(c)    misappropriating Union Place's funds by reimbursement of RCMC for expenses not incurred;

(d)    misappropriating of Union Place's funds by giving ADC $140,000 as a general conditions fee for work never performed;

(e)    causing Union Place to default on its loan; and

(f)    failing to make Additional Capital Contributions.

146.    Union North's conduct reduced the financial assets of Union Place and thereby reduced TIAA Union's return on investment in Union Place.

147.    Union North's breach of its duty of good faith and fair dealing caused TIAA Union to suffer damages of at least $6,175,217.59 plus pre-judgment interest on that amount.

WHEREFORE, TIAA Union requests that judgment be rendered in its favor and against Union North in an amount of not less than $6,175,217.59, or other amount to be proved at trial, in compensatory damages, plus pre-judgment interest, attorneys' fees and costs, and such other relief as may be appropriate.

## COUNT IV
## CONSTRUCTIVE TRUST - K STREET, PMAS, RCMC, ADC

148.    Union Place realleges ¶¶ 1-147 as if fully set forth herein.

37

149.   K Street and PMAS are liable to Union Place for a constructive trust of the amounts paid by Union Place for the 2009 and 2010 property taxes for the Phase II Property.

150.   K Street and PMAS misappropriated Union Place funds to pay for the 2009 and 2010 property taxes for the Phase II Property.

151.   K Street and PMAS misappropriated the following amounts from Union Place:

    (a)   at least $150,930.92 on April 26, 2010;

    (b)   at least $156,029.90 in September 2010; and

    (c)   at least $150,530.92 on April 25, 2011.

152.   K Street and PMAS should not be allowed to keep these misappropriated funds because the funds do not belong to them and because they have no legal right to the funds.

153.   Therefore, the Court should impose a constructive trust on K Street and PMAS in favor of Union Place in the amount of at least $457,491.74.

154.   RCMC is liable to Union Place for a constructive trust of the amount of the tax refund issued to Union Place and the amounts paid by Union Place to reimburse RCMC for expenses that it never incurred.

155.   RCMC misappropriated Union Place's tax refund of at least $190,744.00 and misappropriated at least $37,859.00 from Union Place as reimbursements to RCMC for expenses that it never incurred.

156.   RCMC should not be allowed to keep these misappropriated funds because the funds do not belong to RCMC and because RCMC has no legal right to the funds.

157.   Therefore, the Court should impose a constructive trust on RCMC in favor of Union Place in the amount of at least $228,603.00.

15661500v.3

158.    ADC is liable to Union Place for a constructive trust of the at least $140,000.00 general conditions fee paid by Union Place to ADC for work never performed.

159.    ADC misappropriated at least $140,000.00 from Union Place as a fictitious general conditions fee.

160.    ADC should not be allowed to keep these misappropriated funds because the funds do not belong to ADC and because ADC has no legal right to the funds.

161.    Therefore, the Court should impose a constructive trust on ADC in favor of Union Place in the amount of at least $140,000.00.

WHEREFORE, Union Place requests that judgment be rendered in its favor and against K Street, PMAS, RCMC, and ADC, and that constructive trusts be imposed in Union Place's favor (a) against K Street and PMAS for an amount not less than $457,491.74, or other amount to be proved at trial; (b) against RCMC for an amount not less than; $228,603.00, or other amount to be proved at trial; and (c) against ADC for an amount not less than $140,000.00, or other amount to be proved at trial.  Union Place also requests that the Court award such other relief as may be appropriate.

## COUNT V
## CONVERSION - UNION NORTH, K STREET, PMAS, RCMC

162.    Union Place realleges ¶¶ 1-161 as if fully set forth herein.

163.    Union North, K Street, PMAS, and RCMC unlawfully exercised ownership, dominion, or control over Union Place's funds in denial or repudiation of Union Place's right to those funds.

164.    Union North, K Street, PMAS, and RCMC converted Union Place's funds by engaging in the following acts:

(a)     misappropriating at least $457,491.74 of Union Place's funds to pay the

2009 and 2010 property taxes on the Phase II Property;

(b)     misappropriating Union Place's $190,744.00 tax refund;

(c)     misappropriating Union Place's funds by reimbursement of at least

$37,859.00 to RCMC for expenses not incurred; and

(d)     misappropriating Union Place's funds by giving ADC $140,000 as a

general conditions fee for work never performed.

165.    Union North and RCMC know that the foregoing funds belong to Union Place but

have refused to return those funds to Union Place.

166.    Upon information and belief, K Street and PMAS know that the foregoing funds

belong to Union Place and have not returned those funds to Union Place.

167.    Union North's, K Street's, PMAS's, and RCMC's continued possession of the

foregoing funds is unlawful.

168.    Union North's, K Street's, PMAS's, and RCMC's unlawful conduct has seriously

interfered with Union Place's right to control the foregoing funds.

169.    Union North's, K Street's, PMAS's, and RCMC's unlawful conduct has caused

damages to Union Place of at least $826,094.74 plus pre-judgment interest.

170.    Upon information and belief, Union North, K Street, PMAS, and RCMC continue

to hold the foregoing funds out of fraud, ill will, recklessness, wantonness, oppressiveness, or

willful disregard of Union Place's rights.  Accordingly, Union North, K Street, PMAS, and

RCMC are liable for punitive damages.

WHEREFORE, Union Place requests that judgment be rendered in its favor and against

Union North, K Street, PMAS, and RCMC in an amount of not less than $826,094.74, or other

amount to be proved at trial, in compensatory damages, plus pre-judgment interest, attorneys' fees and costs, punitive damages, and such other relief as may be appropriate.

<u>COUNT VI</u>
<u>INDEMNIFICATION - UNION NORTH</u>

171.    TIAA Union and Union Place reallege ¶¶ 1-170 as if fully set forth herein.

172.    Section 4.9 of the LLC Agreement provides that Union North agrees to indemnify, defend, and hold harmless Union Place and TIAA Union from any loss or damage resulting from Union North's negligence, gross negligence, willful misconduct, or bad faith.

173.    As shown in the foregoing allegations, Union North misappropriated or facilitated, approved, or allowed the misappropriation of at least $826,094.74 from Union Place.

174.    Union North's conduct was negligent, grossly negligent, willful, or in bad faith.

175.    Union North is obligated under the LLC Agreement to indemnify Union Place for any loss or damage, including attorneys' fees incurred to enforce Union Place's rights, resulting from Union North's conduct in misappropriating or facilitating, approving, or allowing the misappropriation of at least $826,094.74 from Union Place.

176.    Union Place has suffered loss or damage of at least $826,094.74 plus pre-judgment interest and attorneys' fees incurred to date relating to Union Place's claims against Union North and its Affiliates.

177.    In addition to engaging in the foregoing conduct relating to misappropriation, before filing its Complaint, Union North knew that it had misappropriated or facilitated, approved, or allowed the misappropriation of at least $826,094.74 from Union Place.

178.    Before filing its Complaint, Union North knew or should have known that TIAA Union was within its contractual rights under the LLC Agreement to remove Union North as Operating Member.

179.     Nonetheless, Union North sued TIAA Union for breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing.

180.     Union North filed its claims against TIAA Union out of negligence, gross negligence, willful misconduct, or bad faith.

181.     Upon information and belief, Union North willfully or in bad faith failed to make Additional Capital Contributions of $5,349,522.59.

182.     Union North is obligated under the LLC Agreement to indemnify TIAA Union for any loss or damage, including attorneys' fees incurred to defend against Union North's claims and to indemnify TIAA Union for any loss or damage, including attorneys' fees to enforce TIAA Union's rights, resulting from Union North's conduct in (a) misappropriating or facilitating, approving, or allowing the misappropriation of at least $826,094.74 from Union Place, (b) bringing meritless claims against TIAA Union, and (c) willfully and in bad faith failing to make Additional Capital Contributions.

183.     TIAA Union has suffered loss or damage of at least $6,175,217.59 plus pre-judgment interest and attorneys' fees incurred to date relating to Union North's claims against TIAA Union and TIAA Union's claims against Union North and its Affiliates.

WHEREFORE, TIAA Union and Union Place request that judgment be rendered in their favor and against Union North in amounts of not less than $826,094.74, or other amount to be proved at trial, in compensatory damages for Union Place and not less than $6,175,217.59, or other amount to be proved at trial, in compensatory damages for TIAA Union, plus pre-judgment interest, attorneys' fees and costs, and such other relief as may be appropriate.

<u>COUNT VII</u>
<u>ACCOUNTING - RCMC</u>

184.     TIAA Union and Union Place reallege ¶¶ 1-183 as if fully set forth herein.

42

185.    RCMC had a contractual or fiduciary duty to manage Union Place's financial

accounts in the best interests of Union Place and the LLC Members, including TIAA Union.

186.    RCMC violated that duty by misappropriating funds belonging to Union Place.

187.    Union North had a contractual and a fiduciary duty to manage Union Place's

financial accounts in the best interests of Union Place and the LLC Members, including TIAA

Union.

188.    Union North violated those duties by misappropriating or facilitating, approving,

or allowing the misappropriation of Union Place's funds.

189.    Upon information and belief, Union North directed the actions of RCMC

regarding Union Place's funds.

190.    Union Place's auditor was unable to reconcile RCMC's accounts with Union

Place's accounts because RCMC did not provide access to its accounts.

191.    TIAA Union and Union Place cannot determine exactly how much money RCMC

misappropriated without an accounting of funds from RCMC and Union North.

192.    Therefore, this Court should order an accounting on behalf of Union Place and

TIAA Union.

WHEREFORE, TIAA Union and Union Place request that judgment be rendered in their

favor and that Union North and RCMC be ordered to give an accounting and that the Court

award such other relief as may be appropriate.

## COUNT VIII
## BREACH OF CONTRACT - RONALD COHEN

193.    TIAA Union and Union Place reallege ¶¶ 1-192 as if fully set forth herein.

194.    TIAA Union, Union Place and Ronald Cohen are parties to the Guaranty.

15661500v.3

195.    Under the Guaranty, Ronald Cohen is obligated to guaranty payment and performance of the Guaranteed Obligations, *i.e.* Union North's obligations under the LLC Agreement.

196.    As noted in the prior Counts, Union North breached the LLC Agreement by engaging in conduct that violated, among other sections, §§ 4.1, 4.2, 4.4, 4.5, 4.7, 4.8, 4.10, and 4.14 of the LLC Agreement.

197.    On February 22, 2012, Ronald Cohen was provided Notice of Union North's breach of its obligations.

198.    Ronald Cohen has in turn breached the Guaranty by failing to guaranty Union North's payment or performance under the LLC Agreement.

199.    Ronald Cohen has never remedied Union North's misconduct. Instead, he has filed and pursued this litigation.

200.    Ronald Cohen's breaches of the Guaranty caused TIAA Union and Union Place to suffer damages plus pre-judgment interest on that amount.  The relief sought herein does not include payment of the outstanding Capital Contributions, the payment of which is prescribed by the LLC Agreement.

WHEREFORE, TIAA Union and Union Place request that judgment be rendered in their favor and against Ronald Cohen for damages in an amount to be proved at trial, plus pre-judgment interest, attorneys' fees and costs, and such other relief as may be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, TIAA Union and Union Place pray for judgment as follows:

201.    That the Court award the relief requested in the foregoing Counts, and

202.    That the Court award TIAA Union and Union Place attorneys' fees, costs, interest

(contractual and pre-judgment), and other relief pursuant to the LLC Agreement, the Guaranty,

applicable law, and this Court's powers, and

203.    That the Court award TIAA Union and Union Place such other and further relief

as the Court may deem just and equitable.

## JURY DEMAND

TIAA Union and Union Place hereby demand a trial by jury of all issues so

triable.


Dated:  August 22, 2013                  Respectfully submitted,


                                         TEACHERS INSURANCE AND ANNUITY
                                         ASSOCIATION OF AMERICA, TIAA UNION
                                         PLACE PHASE I, LLC, AND TIAA-CREF GLOBAL
                                         INVESTMENTS, LLC AND UNION PLACE PHASE
                                         I, LLC

                                         _____/s/ Rebecca Woods_____
                                         Rebecca Woods (D.C. Bar No. 468495)
                                         SEYFARTH SHAW LLP
                                         975 F Street, N.W.
                                         Washington, D.C.  20004
                                         Telephone:  (202) 463-2400
                                         Facsimile:  (202) 828-5393
                                         rwoods@seyfarth.com

                                         *Counsel for Defendants Teachers Insurance and
                                         Annuity Association of America, TIAA Union Place
                                         Phase I, LLC, and TIAA-CREF Global Investments,
                                         LLC and Third-Party Plaintiff Union Place Phase I,
                                         LLC*

45

15661500v.3