# EXHIBIT 24

1

1           UNITED STATES DISTRICT COURT

2           FOR THE DISTRICT OF COLUMBIA

3    _____

4    K STREET DEVELOPERS,    :

5    LLC, et al.,            :

6            Plaintiffs,:

7       vs.                 : Civil Action No.

8    Teachers INSURANCE     : 1:12-cv-00666-RLW

9    AND ANNUITY ASSOCIATION:

10   OF AMERICA, et al.,     :

11           Defendants.:

12   _____:

13

14                          Friday, May 3, 2013

15                          Washington, D.C.

16   The Deposition of ALEX DIAZ was taken on Friday, May 3,

17   2013, commencing at 9:55 a.m., at the Law Offices of

18   Cooter, Mangold, Deckelbaum & Karas, LLP,

19   5301 Wisconsin Avenue, NW, Suite 500, Washington, D.C.,

20   before Dianne M. Reidy  Notary Public, Registered

21   Professional Reporter.

22

4

1

2

3

4

5

6

7

8

9      Q.  And with whom are you affiliated?

10     A.  I'm with the Cohen Companies.

11     Q.  And what is your title?

12     A.  CFO.

13     Q.  Who actually pays your paychecks?

14     A.  Ronald Cohen Management Company.

15     Q.  RCMC?

16     A.  Yes.

17

18

19

20     Q.  Since when have you been CFO of RCMC?

21     A.  Since 1997.  I joined the company in `95.

22     Q.  What was your role in `95?

5

1      A.  I was the senior accountant.

17      Q.  For which Cohen entities do you function as

18   CFO?

19      A.  All of them, except for ADC Builders.

1      Q.  What role, if any, did you play with respect

2  to Union Place?

3      A.  I was just in charge of doing all the draw

4  requests to Westimmo.

18

1

2

3

4

5      Q.  So we will go through some of the auditor

6    letters, but what appears to have happened -- and

7    frankly, it made the auditor's life a little bit

8    difficult -- is that rather than disbursing payments

9    from the Union Place account, what would happen was the

10   RCMC account, or sometimes PMAS, would pay for things,

11   and then it would get reimbursed from Union Place once

12   a construction job or I presume an equity infusion was

13   made.  Why did that happen that way?

14      A.  It's just the way -- that's the way the

15   property management industry operates.  That account is

16   an agency account for various entities.  We're not

17   going to have 50 different check runs for 50 different

18   entities, so we run all the checks out of one account.

19   And then if it's a Cohen entity, we're not going to

20   take money from one pocket and put it in the other.  So

21   we won't reimburse it, but if it is an outside entity

22   with other partners that are not affiliated with the

19

1    Cohens, then we would reimburse the fund or vice versa.

2       Q.  Right.  So RCMC is a management arm of the

3    Cohen Company, right?

4       A.  Yes.

5       Q.  So as a result, RCMC is disbursing payments,

6    for example, to vendors for properties other than Union

7    Place, right?

8       A.  Yes.

9       Q.  Okay.  So as CFO, are you in charge or

10    ultimately responsible for making sure that the

11    disbursements and the reimbursements are appropriate?

12       A.  Yes.

13       Q.  So how do you keep the accounts separate or

14    the money separate?

15       A.  Yeah, on each entity there is an account, the

16    number is 2020.  It's called Due to, Due From the fund.

17    So depending if there is a credit balance or a debit

18    balance, if there's a credit balance say on Union Place

19    Phase I, that means that Union Place owes the fund

20    money.  So the fund pays something in behalf of that

21    entity and it has not been reimbursed yet.

22       Q.  Did the Cohens have other projects going on

1    during the construction of Phase I?

2         A.  Yes.

3         Q.  So then I presume that RCMC was paying vendors

4    for both Union Place and for the other entities, right?

5         A.  Yes.

6         Q.  Would one of the other entities have been

7    Velocity?

8         A.  Yes.

9         Q.  So then how did you keep track of payments

10   made on behalf of a vendor vis-à-vis Union Place versus

11   Velocity in your books?

12        A.  Okay.  So the entity number for Union Place is

13   entity 204.  So when we have an invoice that comes in,

14   say it's made payable to GTM Architect, so we code it

15   to entity 203, architect expense.

16        Q.  203 or 204?

17        A.  I'm sorry, four.  Velocity is 203.

18        Q.  Okay.

19        A.  So when we code it to that particular entity,

20   it automatically debits an expense and it creates a

21   liability.  So that liability is to the fund because

22   the fund has made the payment in behalf of that entity.

21

1   So all the invoices that come in for all the various

2   entities, they have been assigned a company number.

3       Q.  But it requires that that assignment be done

4   correctly, right?

5       A.  Yes.

1      A.  Because we were making a transition to a new

2  management company.

3      Q.  From RCMC?

4      A.  From RCMC to PMAS.

5      Q.  Was that completed?  Because my understanding

6  is RCMC is still the management company.

7      A.  RCMC, in some capacity, is the manager for

8  certain projects, but we're slowly transitioning

9  everything over to PMAS.  PMAS is Property Management

10  Account Services.

11      Q.  Okay.

12      A.  So we just started a new management company.

13      Q.  Okay.  Got it.  So then how would you have

14  designated in the books that this tax amount was paid

15  and is now due from Union Place?

16      A.  I would have just coded it to construction in

17  progress.

18      Q.  And then you would code it to be number 204?

19      A.  Yes.

20      Q.  All right.  So at one point in time there was

21  a tax, a revision in the tax rates that applies to

22  Phase I.  And for 2009, Phase I owed no taxes and in

34

1    fact had a credit of $190,000 and change.  Do you

2    remember that?

3         A.  Yes.

4         Q.  So D.C. sent a reimbursement check -- it looks

5    like to the Rockville address -- for that Phase I

6    property.  And it looks like RCMC deposited that money

7    in its account, and that money never wound its way back

8    to Union Place.  Does that sound right?

9         A.  That's correct.

10        Q.  Why did that happen?

11        A.  The reason why that happened was is D.C.

12   Treasury issued the check made payable to the Cohen

13   Companies.  So in our office, when we see something

14   that's for the Cohen Companies, we gave it to my

15   assistant and we just deposit into our fund, you know,

16   gave credit to Cohen entity, assuming it was for a

17   Cohen entity because it was made out to the Cohen

18   Companies.

19        Q.  Okay.  Wouldn't that check have accompanied

20   some sort of documentation that indicated it was a tax

21   reimbursement for a particular piece of property?

22        A.  It could have, yes.  But again, we just looked

1    at who it was made payable to.  And we just assumed

2    incorrectly that it was for the Cohen Companies and we

3    deposited it into a Cohen account and gave credit --

4    gave that to a Cohen entity.

5        Q.  Right.  Is there any internal procedure to

6    check for checks that are coming in, match them up

7    against any liabilities owed?  Or is the reaction, Woo,

8    we got $190,000; don't know where it came from, but

9    great?

10       MR. COOTER:  Or something else?  We get checks in

11   here all the time.  I sometimes don't know what they

12   are and I rarely go Woo, cool.

13       THE WITNESS:  No.  We were doing tax appeals for

14   more than one entity, so incorrectly we assumed it was

15   for a Cohen entity.

16   BY MS. WOODS:

17       Q.  You agree that that $190,000 should have been

18   deposited or credited back to Union Place.

19       A.  Yes.

20       Q.  And when the auditors asked you about that,

21   you communicated with them, as reflected in D-38.

22       (Thereupon, Exhibit No. 38 was marked.)

1    BY MS. WOODS:

2         Q.   In May of 2010, you state to Jeff Silver:

3    "You can accrue the receivable for real estate in 2009

4    that will actually be collected in 2010.   The amount is

5    $190,744."  Then he says:  "Thank you.  Okay."

6              Did you interact with Jeff Silver for AGH?

7         A.   Yes.

8         Q.   It sounds like the Cohen Companies knew that

9    there would be accounts receivable at some point in the

10   future of $190, but it would actually be collected at

11   some point in 2010.

12        A.   Yeah.  When the auditors were questioning what

13   happened to the $190,000, obviously we had no idea

14   because we really thought -- we found out afterwards

15   that the check was to the Cohen Companies, so we were

16   really baffled by their question.  So we had to get on

17   the phone and get in touch with somebody at D.C.

18   Treasurer -- and that's a battle in itself.  That was

19   the reason why we just said just put it -- we had to

20   get this audit done; there was a time frame that they

21   wanted it done, Teachers needed it.  So we said, let's

22   put it on as accounts receivable.

37

1      Q.  But what I don't understand is when you say

2  you can approve the accounts receivable for real estate

3  in 2009 that would actually be collected in 2010, what

4  did you mean by that, that would actually be collected

5  in 2010.  Collected by whom?

6      A.  I don't know what I meant with that to be

7  honest with you.  I guess I was just telling them to

8  code it as an accounts receivable until I figured out

9  where the $190,000 was.  Because it was reflected on

10  the bill as a credit, so that money was just floating

11  out there somewhere.

12

13

14

15

16

17

18

19

20

21

22

38

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21      Q.  D-40 is a series of e-mails.  So here, Michael

22   Hollander was communicating with the auditor in

1    mid-March 2011.  And at some point Chris VonGuggenberg

2    -- what is Chris' title?

3         A.  He is an outside consultant.  He doesn't work

4    for the company.  He is a CPA who prepares all of our

5    tax returns, and he works out of our office.

6         Q.  I see.  Does he work for other people?

7         A.  Yes.

8         Q.  But he is housed in your offices?

9         A.  Yes.

10        Q.  So he responds and he says:

11            "Alex and Rody looked into the tax refund.

12   Apparently it was received and mistakenly deposited to

13   K Street Developers.  Can you reclassify it as a

14   receivable from Cohen?"

15            Who is Rody?

16        A.  Rody is my assistant.

17        Q.  And Alex would be you?

18        A.  Yes.

19        Q.  And this is not specific, but is it correct

20   for me to presume that when he is saying it was

21   received and mistakenly deposited into K Street,

22   reclassified as a receivable from Cohen, that we're

40

1    talking about the $190,000 credit?

2         A.   Yes.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

44

8      Q.  Do you know how AGH was selected to be the

9   auditor?

10      A.  No, I do not.  Chris would know that.

11   Actually, I'm sorry.  Teachers, they gave us -- I think

12   they gave us a couple of firms that they had done

13   business with, and we ended up choosing AGH.

45

1

2

3

4

5

6        (Thereupon, Exhibit No. D-42 was marked.)

7   BY MS. WOODS:

8        Q.  Would you have reviewed this letter when you

9   received it?

10       A.  I would have given it to Chris to look at.

11       Q.  Chris VonGuggenberg?

12       A.  Yes.

13       Q.  So as CFO, you would have given it to the CPA

14  to look at?

15       A.  Yes.

16       Q.  Do you know if you did?

17       A.  Probably yes.

18       Q.  Do you remember if you talked about the

19  substance of this?

20       A.  I mean, I know what an audit entails, so I

21  didn't need to see every detail that they were going to

22  do.  I know what comprises an audit.

48

17        (Thereupon, Exhibit No. D-44 was marked.)

18   BY MS. WOODS:

19        Q.  I have marked as D-44 the independent auditors

20   report for 2010.  You can see on the third page it's

21   addressed to the members of Union Place Phase I.

22             Now, had you seen audit reports before?

49

1      A.   Yes.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

52

1

2

3

4           (Thereupon, Exhibit No. D-45 was marked.)

5     BY MS. WOODS:

6           Q.  D-45 is an e-mail from you to the auditor.

7     The exhibit is just one sheet, not two sheets.

8                All right.  So the e-mail is odd, but in the

9     middle of the page it looks like there is a question

10    posed to you from the auditor:

11               "In reviewing capital activity through

12    September 30, 2011, we noted contributions made only by

13    Teachers.  Were these capital calls the sole

14    responsibility of Teachers we would expect to see a 10

15    percent contribution from Cohen."

16               And then you respond:  "Record the 10 percent

17    portion of the capital contribution to AR from Cohen."

18               Is this in relation to the Kitchen on K?

19         A.  Yes.

20         Q.  Anything else included in that?

21         A.  No.

22         Q.  And AR from Cohen is accounts receivable from

53

1    Cohen?

2         A.   Yes.

3         Q.   Meaning Cohen owes that to Union Place?

4         A.   Yes.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

56

1                    C E R T I F I C A T E

2

3

          I do hereby certify that I am a Notary
4    Public in good standing, that the aforesaid
     testimony was taken before me, pursuant to
5    notice, at the time and place indicated; that
     said deponent was by me duly sworn to tell
6    the truth, the whole truth, and nothing but
     the truth; that the testimony of said
7    deponent was correctly recorded in machine
     shorthand by me and thereafter transcribed
8    under my supervision with computer-aided
     transcription; that the deposition is a true
9    and correct record of the testimony given by
     the witness; and that I am neither of counsel
10   nor kin to any party in said action, nor
     interested in the outcome thereof.

11

          WITNESS my hand and official seal this
12   _____ day of _____, 20      .

13

14

15        _____
                    Notary Public
16

17

18

19

20

21

22

57

1          K Street Developers v. Tiaa Et Al

2               ALEX DIAZ

3          INSTRUCTIONS TO THE WITNESS

4          Please read your deposition over

5     carefully and make any necessary corrections.

6     You should state the reason in the

7     appropriate space on the errata sheet for any

8     corrections that are made.

9          After doing so, please sign the errata

10    sheet and date it.

11         You are signing same subject to the

12    changes you have noted on the errata sheet,

13    which will be attached to your deposition.

14         It is imperative that you return the

15    original errata sheet to the deposing

16    attorney within thirty (30) days of receipt

17    of the deposition transcript by you.  If you

18    fail to do so, the deposition transcript may

19    be deemed to be accurate and may be used in

20    court.

21

22    1658206

58

1        K Street Developers v. Tiaa Et Al

2                ALEX DIAZ

3              E R R A T A

4               - - - - -

5     PAGE   LINE    CHANGE

6     _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

7     Reason:_____

8     _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

9     Reason:_____

10    _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

11    Reason:_____

12    _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

13    Reason:_____

14    _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

15    Reason:_____

16    _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

17    Reason:_____

18    _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

19    Reason:_____

20    _ _ _  _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _

21    Reason:_____

22    1658206

59

1        K Street Developers v. Tiaa Et Al

2            ALEX DIAZ

3        ACKNOWLEDGMENT OF DEPONENT

4          I, _____, do

5    hereby certify that I have read the foregoing

6    pages and that the same is a correct

7    transcription of the answers given by

8    me to the questions therein propounded,

9    except for the corrections or changes in form

10    or substance, if any, noted in the attached

11    Errata Sheet.

12

13    _____      _____

14    DATE             SIGNATURE

15

16    Subscribed and sworn to before me this

17    _____ day of _____, 20__.

18

19    My commission expires: _____

20    _____

21    Notary Public

22     1658206