# EXHIBIT 25



**BUSINESS ADVISORS**
**CERTIFIED PUBLIC ACCOUNTANTS**

June 15, 2010

Alex Diaz
Cohen Companies
2701 Tower Oaks Blvd.
Suite 200
Rockville, MD 20852

Dear Mr. Diaz:

In planning and performing our audit of the financial statements of Union Place Phase I, LLC ("the Company") as of and for the year ended December 31, 2009, in accordance with auditing standards generally accepted in the United States of America, we considered the Company's internal control over financial reporting (internal control) as a basis for designing our auditing procedures for the purpose of expressing our opinion on the financial statements, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control. Accordingly, we do not express an opinion on the effectiveness of the Company's internal control.

Our consideration of internal control was for the limited purpose described in the preceding paragraph and was not designed to identify all deficiencies in internal control that might be significant deficiencies or material weaknesses and therefore, there can be no assurance that all deficiencies, significant deficiencies, or material weaknesses have been identified. However, as discussed below, we identified deficiencies in internal control that we consider to be material weaknesses.

A deficiency in internal control exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent, or detect and correct misstatements on a timely basis. A material weakness is a deficiency, or a combination of deficiencies, in internal control, such that there is a reasonable possibility that a material misstatement of the entities' financial statements will not be prevented, or detected and corrected on a timely basis. We consider the following deficiencies in the Company's internal controls to be material weaknesses:

1) Better segregation of duties should be implemented within the accounting and financial statement preparation functions.

2) Proper cut-off procedures for period-end, and year-end, cutoffs have not been implemented.

3) Receivables, retainage payable and amortization balances are not reconciled properly on a monthly basis.

4) It appears that the Company's cash account required in accordance with the development agreement was not utilized effectively for its intended use.



DEPOSITION EXHIBIT
D-42
5.3.13

3500 Piedmont Road Suite 600, Atlanta, Georgia 30305. Phone 404-233-5486, Fax 404-237-8325
E-mail cpa@aghllc.com Web Page www.aghllc.com

CONFIDENTIAL                                                             TIAA000024

Our recommendations regarding these material weaknesses are as follows:

1) It is a necessity to have segregation of duties within the accounting function for the purposes of fraud prevention and proper oversight. We noted that management segregates certain functions within the accounting environment, however we believe management should create another layer of oversight, such as an assistant controller, between Alex Diaz ("CFO") and the current construction accountant considering the volume of projects being handled by Cohen Companies ("Cohen"). Having another reviewer in place will strengthen the oversight of the day-to-day posting of transactions, allow for weekly or bi-weekly reviews of the general ledger and create less work for the CFO at month-end and year-end as it relates to the level of review of the accounting records. This additional time will allow the CFO to deal with the higher level tasks such as organization of monthly draw requests, closer oversight of the project's budget and general time to tend to other projects in process.

2) We noted during the audit that proper cutoff procedures were not being utilized in order to properly reflect construction costs incurred as of December 31, 2009 in the accounting records. Approximately $4 million in adjustments to construction in progress were recorded as the result of improper cutoff procedures. In order to prevent future occurrences we suggest that period-end/year-end closeout procedures be modified. In preparation for the closeout, the accounting department should be in communication with the general contractor regarding the construction costs (hard costs and soft costs) incurred through the accounting period cutoff date. We suggest setting up monthly reminders for the week prior to closeout to follow-up with the general contractor. This will help keep everyone on the same page as far as the accounting department's financial reporting needs. The general contractor's day-to-day involvement with the project is an invaluable resource when it comes to tracking costs for accounting purposes. This is a crucial step because it was noted during the audit that the period for the construction AIA's do not coincide with the calendar month. Additionally, invoices from subcontractors may not be received until well after the closeout date. In order to capture the costs in the correct period, invoices received subsequent to year end should be reviewed and appropriate costs allocated to the prior period. For any other period costs (administrative, debt, etc.) we advise setting-up recurring journal entry reminders so that necessary accruals for these costs are also captured.

3) In addition to improper cutoff procedures we noted a handful of other material adjustments that needed to be made in order to reconcile receivables, retainage payable and amortization.

We noted a receivable had not been recorded for a real estate tax refund of approximately $190,000 from the county taxing authority. The refund was attributed to a retroactive restatement of the property value dating back to the inception of the entity. This was a concern because there was no record of the refund being recognized by management or in the accounting records, thus increasing the potential of misappropriations of the Company's assets. As of the date of the audit, the $190,000 had not yet been received by the Company. We suggest that any significant refunds or credits to be received from local, state or federal agencies be communicated with the members as they arise and recorded as a receivable in the general ledger.

We noted that accumulated amortization and retainage payable had not been reconciled properly as of December 31, 2009. We recommend instituting basic accounting policies in order to assure the accounts are reconciled. For amortization, the related intangible (deferred loan costs) is amortized on a straight line basis over the terms of the construction loan agreement. By creating a monthly recurring entry within the Timberline system, this should eliminate the need for anything more than a periodic spot check of the account balances to assure accuracy. For the retainage payable balance, the amount needs to be segregated from construction in progress. The purpose is to accurately reflect the Company's liability to the general contractor for satisfying the performance of the construction contract. Because the draw requests crossover into different calendar months, an allocation based on the number of days in the construction period would be the preferred reconciliation methodology.

4) When auditing the accounting records provided we noticed that all cash transactions posted to the general ledger were journal entries. The journal entry amounts posted were batch totals of construction costs reimbursed to the general contractor (via wire transfer). It appears that Cohen is funding all construction-related expenses up-front through their own management company's account and then reimbursing themselves after proceeds are received from construction loan funding. In our opinion, by commingling the Company's cash activity with that of Cohen's management company, the cash audit trail is diminished and more difficult to follow. In addition, the risk of error in the accounting records is increased significantly by commingling the Company's transactions with that of an affiliate. A bank account was required to be setup as part of the development agreement to handle all cash inflows and outflows related to the construction costs. Proper accounting controls require that each invoice for any construction-related costs incurred should be posted (in detail) to the general ledger, the accounts payable account should be utilized to track all outstanding amounts due to vendors (and for better overall cash management), all cash payments on outstanding invoices should be done through writing checks (or via wire transfer as necessary) and the bank account should be reconciled monthly and submitted as part of the financial statement package to the members of the Company to review.

This communication is intended solely for the information and use of management and others within the organization, and is not intended to be and should not be used by anyone other than these specified parties.

*Aarons Grant & Habif, LLC*

Aarons Grant & Habif, LLC

June 15, 2010